454 So.2d 697 (1984)
ORKIN EXTERMINATING COMPANY, INC., Appellant/Cross Appellee,
v.
PALM BEACH HOTEL CONDOMINIUM ASSOCIATION, INC., Appellee/Cross Appellant.
No. 83-1219.
District Court of Appeal of Florida, Fourth District.
August 8, 1984.
Rehearing Denied September 7, 1984.
*698 John Neil Buso of Walton, Lantaff, Schroeder & Carson, West Palm Beach, for appellant/cross appellee.
Roberta J. Karp of Bernstein, Narkier, Monchick & Karp, West Palm Beach, for appellee/cross appellant.
GLICKSTEIN, Judge.
This is an appeal by Orkin, a nationally known exterminator, from a judgment against it. The facts reflect that a sales manager located at an Orkin office on the west coast of Florida tendered a bid for extermination of termites from a hotel complex located in Palm Beach. The bid was tendered in January, 1983 to the party then owning the property, but was accepted by the party which was purchasing the property. Orkin acknowledged the acceptance after the extermination contract had been executed. Subsequently, however, Orkin realized its employee had tendered a woefully cheap contract price of $8,607 and refused to perform. The buyer was required to get another party to do the same work for $38,000, and sued Orkin for the difference. Orkin appeals the judgment entered against it for the cost of having the work done. We affirm.
The non-jury trial was very short. The only witness testifying for the hotel was the buyer's president, who executed the contract on behalf of the hotel. He testified that he saw the written bid and contract which Orkin had tendered to the seller, and telephoned Orkin's sales manager on the west coast, describing the number of buildings as well as the number of rooms in the hotel. When he telephoned, he had no idea whether Orkin's bid was still valid, so he confirmed that it was, then signed and returned the contract along with a check and confirming letter. The letter reiterated what had been discussed by telephone; namely, that the hotel complex included a four story building with approximately 300 rooms, a three story annex and a single family dwelling. On receipt of the letter and contract, the west coast sales manager wrote the buyer, acknowledging receipt, discussing the scheduled fumigation, and thanking it for the business. The buyer's president further testified that had the bid not been valid, the hotel complex sales transaction would have been different because the numbers, which could have been adjusted, included an allowance for the fumigation cost as given by Orkin. On rebuttal, he was asked and answered the following question with respect to the west coast sales manager, Mr. Keyes:
Q Was it your understanding that Mr. Keyes was fully and completely aware of the size and nature of this building? I am talking about the three buildings; the Hotel and the annex and the single-family home, and was he aware that they took up a city block when he confirmed the price for you?
A There is no doubt in my mind that I described the area to him. I described  or rather, I told him that it was almost a full city block and that it included a four-story building with three hundred hotel rooms. Then I put it in writing. I also wanted to verify with him that he was a Sales Manager and not just some clerk. I wanted to make sure that he was a bona fide representative. He said that he was a Sales Manager.
Orkin introduced a letter from its office in Palm Beach, dated six weeks after the *699 bid from the west coast office, in which the exterminator stated it would do the work for $69,950. The letter was not addressed to the buyer's president but to some other agent of the buyer. Orkin's two live witnesses were the east coast sales inspector who did the work-up for the higher bid and the West Palm Beach branch manager who testified that he met with the buyer's president one month after the buyer had executed the contract tendered by the west coast sales manager. The only comment of the buyer's president at that meeting about which the branch manager testified was that because he had the lower bid he would be "out of his mind" to accept Orkin's subsequent, higher bid.
The west coast sales manager's deposition was tendered into evidence. Although he testified that this contract required acceptance by Orkin's West Palm Beach branch manager, the issue of his authority was not raised in the pleadings nor pre-trial stipulation, nor was it argued in the briefs here. He testified that he based his bid on conversations with a representative of the seller, not the buyer; that he never saw the buildings; that he did speak by telephone with the buyer's president; and that he received the letter written by the buyer's president, which caused him no problem.
In Maryland Casualty Company v. Krasnek, 174 So.2d 541 (Fla. 1965), the court reinstated a summary judgment in favor of a liability insurer which had made a unilateral mistake and had pled rescission as an affirmative defense. In doing so the court pointed out that rescission would not be appropriate if (a) the mistake was the inexcusable lack of due care or (b) the other party had so changed its position in reliance on the contract that rescission would be unconscionable.
The subject is treated in sections 153 and 154 of the Restatement of Contracts (Second) (1979) which provide:
§ 153. When Mistake of One Party Makes a Contract Voidable.
Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and
(a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
(b) the other party had reason to know of the mistake or his fault caused the mistake.
§ 154. When a Party Bears the Risk of a Mistake.
A party bears the risk of a mistake when
(a) the risk is allocated to him by agreement of the parties, or
(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.
We quote these tests or criteria recognized by the members of the American Law Institute to demonstrate that they are disjunctive, not conjunctive.
Further, in the Maryland Casualty Company case, the court said that if there is substantial evidence to support the trial judge's findings, they should not be disturbed on appeal. In the present case, there is substantial evidence to support a conclusion by the trier of fact that Orkin should bear the risk of its mistake.
HURLEY and WALDEN, JJ., concur.