In re PALM BEACH FINANCE PARTNERS, L.P. and Palm Beach Finance II, L.P., Debtors.

Barry Mukamal, Plaintiff,

v.

BMO Harris Bank N.A. as Successor by Merger to M & I Marshall & Ilsley Bank and Christopher Flynn, Defendants.

Bankruptcy No. 09–36379–BKC–PGH.
Adversary No. 11–03015–BKC–PGH–A.

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

Feb. 26, 2013.

---

Michael S. Budwick, Esq., Paul Steven Singerman, Esq., Miami, FL, Paul A. Avron, Esq., Boca Raton, FL, for Debtors.

Jonathan S. Feldman, Michael S. Budwick, Esq., Solomon B. Genet, Esq., Miami, FL, for Plaintiff.

Charles W. Throckmorton, Esq., Miami, FL.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

PAUL G. HYMAN, JR., Bankruptcy Judge.

**THIS MATTER** came before the Court upon the *Motion to Dismiss* (the "Motion to Dismiss") (ECF No. 72) filed by BMO Harris Bank N.A. as Successor by Merger to M & I Marshall & Ilsley Bank ("M & I" or "Defendant M & I") and Christopher Flynn ("Flynn" or "Defendant Flynn," and together with M & I, the "Defendants"). The Motion to Dismiss seeks dismissal of the *Amended Complaint* (ECF No. 65) filed by Barry Mukamal (the "Plaintiff") in his capacity as Liquidating Trustee for the Palm Beach Finance Liquidating Trust and the Palm Beach Finance II Liquidating Trust. For the reasons discussed below, the Court grants in part and denies in the Defendants' Motion to Dismiss.

### COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND

According to the allegations of the Amended Complaint, Palm Beach Finance Partners, L.P. ("PBF I") and Palm Beach Finance II, L.P. ("PBF II" and together with PBF I, the "Palm Beach Funds") were investors in the purchase financing operation run by Thomas Petters and Petters Company, Inc. (collectively, "Petters"). To facilitate these investing activities, the Palm Beach Funds created an affiliated entity, PBFP Holdings, LLC ("PBFP Holdings"). In soliciting investments, Petters represented to investors that investment funds would be used to finance consumer electronic merchandise transactions. Petters claimed he would arrange for the sale and delivery of con-

sumer electronic merchandise from suppliers to "big box" retailers, such as Costco and Sam's Club. Based upon these representations, the Palm Beach Funds and other investors wired funds directly to the bank accounts of two purported suppliers. After receiving these wire transfers, the suppliers were expected to ship the consumer electronic merchandise to retailers. The retailers were then to send payment for the merchandise to one of Petters' depository accounts (the "PCI Account"), which was maintained at M & I. In theory, those retailer funds were to be used first, to re-pay investors and second, to pay a commission to Petters.

Petters, however, was not operating a legitimate purchase financing operation. Petters was running a Ponzi scheme [1]— there were no purchase orders, no merchandise, no retailers, no sales to any retailers, and no payments from any retailers. Instead, according to the allegations, after receiving wire transfer funds from investors, the suppliers would deduct a commission and then remit the remaining funds to the PCI Account. Thereafter, the funds were allegedly used to repay earlier investors and to fund Petters' lavish lifestyle.

The Plaintiff alleges that M & I, as Petters' primary depository bank, received fraudulent transfers, knew of Petters' fraud, and engaged in wrongdoing which allowed Petters' fraud to continue unde-

tected. Central to the Plaintiff's allegations of wrongdoing is the Deposit Account Management Agreement ("DAMA"), attached to the Amended Complaint as Exhibit 1, executed by Petters and M & I for the stated purpose of providing assurance to certain parties (the "Protected Parties"), which included PBFP Holdings and PBF I, that deposits into the PCI Account which should have been paid to a Protected Party would be properly transferred to the Protected Party.[2] Furthermore, the Plaintiff alleges that Defendant Flynn, an employee of M & I who was primarily responsible for the Petters relationship and who executed the DAMA on behalf of M & I, also knew of Petters' fraud and engaged in wrongdoing which allowed Petters' fraud to continue undetected. Finally, the Plaintiff alleges that as a result of the Defendants' wrongdoing, the Palm Beach Funds entered into hundreds of millions of dollars in new transactions and thus lost more money than they otherwise would have lost.

## CONCLUSIONS OF LAW

### I. Preliminary matters

#### A. Motion to dismiss standard

##### i. General pleading standard—Rules 8(a) and 12(b)(6)

In order to state a claim for relief under Federal Rule of Civil Procedure 8(a) [3] and

---

1. In September 2008, Petters' purchase financing operation was exposed as a Ponzi scheme. In October 2008, Petters was arrested and charged with mail and wire fraud, conspiracy to commit mail and wire fraud, money laundering, and conspiracy to commit money laundering. By April 2010, Petters had been found guilty on all counts and sentenced to 50 years in prison. As a result of this collapse, Petters Company Inc. and other related entities filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the District of Minnesota.

2. PBFP Holdings executed a Release and Indemnification Agreement, attached to the Amended Complaint as Exhibit 2, which explicitly acknowledged its status as a third party beneficiary to the DAMA and consented to the terms of the DAMA.

3. Federal Rule of Civil Procedure 8(a) is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7008.

thus survive a Rule 12(b)(6)[4] motion to dismiss, the factual allegations of the Plaintiff's Amended Complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In determining facial plausibility, a court should not assume the veracity of mere legal conclusions or threadbare recitals of the elements of a cause of action. *Id.* at 679, 129 S.Ct. 1937. However, when "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664, 129 S.Ct. 1937. If a plaintiff's allegations do "not nudge[ ] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

### ii. Pleading special matters—Rule 9(B)

■ When a plaintiff asserts claims based upon fraud or mistake, simply meeting the pleading requirements of Rule 8(a) is insufficient to survive a Rule 12(b)(6) motion to dismiss. In addition, Federal Rule of Civil Procedure 9(b)[5] requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1511 (11th Cir.1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985)). The Eleventh Circuit Court of Appeals has held that:

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir.2008) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir.2007)). However, "Rule 9(b) does not require a plaintiff to allege specific facts related to the defendant's state of mind." *Id.* "[M]alice, intent, knowledge, and other conditions of a person's mind" may be pled generally. FED.R.CIV.P. 9(b).

■ "In construing allegations of actual fraud in an action brought by a bankruptcy trustee, the 'particularity' standard of . . . Rule 9(b) is somewhat relaxed." *Cox v. Grube (In re Grube)*, Adv. No. 10–8055, 2013 WL 343459, at *9 (Bankr.C.D.Ill. Jan. 29, 2013) (citing *Zazzali v. AFA Fin. Grp., LLC (In re DBSI, Inc.)*, 477 B.R. 504 (Bankr.D.Del.2012)); *see also, Ivey v. First–Citizens Bank and Trust Co. (In re Whitley)*, Adv. No. 12–02028, 2013 WL

---

**4.** Federal Rule of Civil Procedure 12(b)(6) is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012.

**5.** Federal Rule of Civil Procedure 9(b) is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7009.

486782, at *13 (Bankr.M.D.N.C. Feb. 7, 2013); *Wiand v. EFG Bank,* No. 8:10–CV–241–T–17MAP, 2012 WL 750447, at *6 (M.D.Fla. Feb. 8, 2012); *Tolz v. U.S. (In re Brandon Overseas, Inc.),* Adversary No. 09–01971–RBR, 2010 WL 2812944, at *5 (Bankr.S.D.Fla. July 16, 2010). Thus, when a trustee brings a claim for fraud, Rule 9(b)'s particularity requirement is met " 'if the person charged with fraud will have a reasonable opportunity to answer the complaint and has adequate information to frame a response ... or if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.' " *In re Brandon Overseas,* 2010 WL 2812944, at *5 (quoting *In re Arizen Homes,* 2009 WL 393863, at *2).

■ "Such flexibility afforded to trustees in bankruptcy with respect to the pleading requirements is [usually] appropriate '[g]iven the inevitable lack of knowledge concerning the acts of fraud previously committed against the debtor, a third party.' " *In re Arizen Homes,* 2009 WL 393863, at *2. However, when a trustee does not suffer from this lack of knowledge, the need to relax Rule 9(b)'s heightened pleading requirements does not exist. In such cases, the trustee will be held to the usual Rule 9(b) standard. *See Roberts v. Balasco (In re Ernie Haire Ford, Inc.),* 459 B.R. 824, 837 (Bankr.M.D.Fla.2011).

*iii. Rule 9(b) and allegations based upon information and belief*

■ Generally, allegations of fraud based on information and belief [6] do not satisfy Rule 9(b)'s heightened standard of pleading. *Hekker v. Ideon Grp., Inc.,* No. 95–681–Civ–J–16, 1996 WL 578335, at *4

(M.D.Fla. Aug. 19, 1996) (citing *Leisure Founders, Inc. v. CUC Int'l, Inc.,* 833 F.Supp. 1562, 1574 (S.D.Fla.1993)). "However, where the subject matter of the fraud is uniquely within the adverse party's knowledge or control, allegations of fraud based upon information and belief may be acceptable." *Id.* (citing *Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628, 645 (3d Cir.1989)); *see also, Hill v. Morehouse Med. Assocs., Inc.,* No. 02–14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003). In such circumstances, allegations made upon information and belief " 'must be accompanied by a statement of the facts on which the belief is founded.' " *Watson v. Riptide Worldwide, Inc.,* No. 11 Civ. 0874(PAC), 2013 WL 417372, at *4 (S.D.N.Y. Feb. 4, 2013) (quoting *Cargo Partner AG v. Albatrans Inc.,* 207 F.Supp.2d 86, 116 (S.D.N.Y.2002), *aff'd,* 352 F.3d 41 (2d Cir.2003)); *see also, Kindred Hospitals East, LLC v. Fox–Everett, Inc.,* No. 3:12–cv–307–J–37MCR, 2012 WL 5467516, at *4 (M.D.Fla. Oct. 4, 2012).

**B. "Law of the case" doctrine**

On July 3, 2012, the Court entered an *Order Granting Motion to Dismiss* (ECF No. 50) (the "July 3 Order"), which dismissed without prejudice the Plaintiff's *Complaint* (ECF No. 1) (the "Initial Complaint"). The Plaintiff now argues that based upon the "law of the case" doctrine, the issues decided by the Court in the July 3 Order cannot now be re-litigated by the parties or reconsidered by the Court with respect to the Defendants' current Motion to Dismiss the Amended Complaint. The Plaintiffs argument does not accurately reflect the "law of the case" doctrine.

---

**6.** The Defendants object to some of the Plaintiff's fraud allegations on the ground that the allegations are based upon information and belief and thus, do not satisfy Rule 9(b)'s

heightened standard of pleading. The Court will address the specific allegations to which the Defendants object in the later sections of this Order.

■ "Under the law of the case doctrine, 'an issue decided at one stage of a case is binding at later stages of the same case.'" *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1288–89 (11th Cir.2009) (quoting *U.S. v. Escobar–Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997)). However, this concept is not as simple as it may initially seem. Notwithstanding the law of the case doctrine, "'a [bankruptcy] court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the [bankruptcy] court.'" *Id.* at 1289 (quoting *Vintilla v. U.S.*, 931 F.2d 1444, 1447 (11th Cir.1991)). This means that the law of the case doctrine only applies when the "law" at issue arose from a final judgment. *Id.* (citations omitted); *see also, Gregg v. U.S. Industries, Inc.*, 715 F.2d 1522, 1530 (11th Cir.1983) (citing *U.S. v. United Smelting, Ref. & Mining Co.*, 339 U.S. 186, 199, 70 S.Ct. 537, 544–45, 94 L.Ed. 750 (1950)) (explaining that "law of the case applies only where there has been a final judgment and not to interlocutory rulings").

■ Because the Court's July 3 Order was not a final judgment, the law of the case doctrine does not apply, and the Court may reconsider any issue ruled upon in that Order.

### C. "Shotgun" pleading

In the July 3 Order, the Court dismissed the Plaintiff's Initial Complaint as a class example of a "shotgun" pleading.[7] The Court reasoned that shotgun pleadings fail to comply with Rule 8(a)'s notice pleading requirements because such pleadings make "'it is virtually impossible to know which

allegations of fact are intended to support which claim(s) for relief.'" *Peavey v. Black*, 476 Fed.Appx. 697, 699 (11th Cir. 2012) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366–67 (11th Cir.1996)).

■ The Defendants assert that the Amended Complaint still exhibits all the objectionable characteristics of a shotgun pleading. However, the Amended Complaint incorporates several important changes aimed at avoiding the issues inherent in shotgun pleadings. First, the Plaintiff condensed the Amended Complaint by removing certain allegations and exhibits. The Amended Complaint stands at 48 pages long and contains 236 numbered paragraphs; in contrast, the Plaintiffs Initial Complaint was 66 pages long and contained 322 numbered paragraphs. Second, not every claim simply reasserts and realleges every preceding paragraph. In Count I, for example, the Plaintiff "reasserts the allegations set forth in paragraphs 1 through 29, 62 through 76, 101 through 134, 143 through 155 and 160 through 163." Am. Compl. ¶ 164. Accordingly, the Court finds that the Plaintiff sufficiently corrected this pleading deficiency and the Amended Complaint no longer constitutes a shotgun pleading.

### II. *Counts I—IV: Fraudulent transfer claims*

Counts I through IV assert fraudulent transfer claims pursuant to 11 U.S.C. §§ 541, 544, 548, 550, and Fla. Stat. §§ 726.105, 726.106, and 726.108. Specifically, the Plaintiff alleges that M & I was a transferee of funds which were received on

---

7. A shotgun pleading "invariably begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir.1998). The pleading then "'incor-

porate[s] every antecedent allegation by reference into each subsequent claim for relief.'" *Liebman v. Deutsche Bank Nat. Trust Co.*, 462 Fed.Appx. 876, 879 (11th Cir.2012) (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir.2006)).

deposit by M & I into the PCI Account. M & I contends that it was not a transferee of these funds, but was instead a "mere conduit." For the reasons discussed below, the Court finds that it cannot determine at the motion to dismiss stage whether M & I is entitled to the protection of the "mere conduit" rule.

The Eleventh Circuit has "carved out an equitable exception" to the literal interpretation of the statutory term "transferee" in the context of fraudulent transfer actions, which is known as the "mere conduit" rule. *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1322 (11th Cir.2010) (citing *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177, 1178–80 (11th Cir.1987)). The mere conduit rule:

> is an equitable exception to fraudulent transfer liability that requires a defendant to "establish (1) that [it] did not have control over the assets received, i.e., that [it] merely served as a conduit for the assets ... and (2) that [it] acted in good faith and as an innocent participant in the fraudulent transfer."

*Perlman v. Bank of America, N.A.*, No. 11–80331–CV, 2012 WL 1886617, at *2 (S.D.Fla. May 23, 2012) (citing *In re Harwell*, 628 F.3d at 1323). In evaluating the good faith portion of the mere conduit rule,

> [t]he relevant question is whether [the bank] had actual knowledge of the ... fraudulent purpose [for which the transfers were made] or had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of the ... fraudulent purpose.

*Perlman v. Bank of America*, 2012 WL 1886617, at *2 (citing *Wiand v. Waxen-*

*berg*, 611 F.Supp.2d 1299, 1319 (S.D.Fla. 2009)).

Ordinarily, it is not appropriate for the Court to determine the applicability of the mere conduit defense at the motion to dismiss stage. The mere conduit rule is an affirmative defense. *Id.; see also, Steinberg v. Barclay's Nominees (Branches) Ltd.*, No. 04–60897–CIV, 2008 WL 4601042, at *7 (S.D.Fla. Sept. 30, 2008). "Florida courts have ... made it abundantly clear that any affirmative defense ... may be considered in resolving a motion to dismiss [only] when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004) (internal citations omitted). Additionally, as noted above, one of the necessary elements of the defense is the defendant's "good faith." The issue of good faith is a question of fact, and as a result, it is generally inappropriate to determine whether a party acted in good faith at the motion to dismiss stage. *Kapila v. Integra Bank, N.A. (In re Pearlman)*, 440 B.R. 569, 577 & n. 32 (Bankr.M.D.Fla.2010) (citing *Notinger v. Costa (In re Robotic Vision Sys., Inc.)*, 374 B.R. 36, 59 (Bankr. D.N.H.2007); *Miller v. McCown De Leeuw & Co., Inc. (In re Brown Schools)*, 368 B.R. 394, 408 (Bankr.D.Del.2007)). These two characteristic thus generally prevent courts from applying the mere conduit defense as a basis for dismissal at the pleading stage.

In considering the Defendants' first Motion to Dismiss, the Court refused to dismiss the Plaintiff's fraudulent transfer claims on the basis of the mere conduit rule because the Court determined that the Initial Complaint failed to affirmatively and clearly show on its face that M & I

acted in good faith.[8] *See* July 3 Order at 25. The Court reasoned that because the mere conduit rule is an affirmative defense, M & I had the burden of pleading and proving the defense and the Plaintiff was not required to anticipatorily allege facts which negate the applicability of the defense. *Id.* at 22 (citing FED. R. CIV. PROC. 8(c); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). The Court also noted that the Plaintiff did indeed plausibly allege facts which would negate M & I's good faith. *Id.*

M & I now asks the Court to reconsider its decision that it would be inappropriate at the motion to dismiss stage to determine that M & I acted in good faith so as to warrant application of the mere conduit defense. As previously discussed, the "law of the case" doctrine does not preclude the Court from reconsidering any part of its July 3 Order. However, for the following reasons, the Court still finds that it would be inappropriate to determine at the motion to dismiss stage that M & I acted in good faith.

■■■ As the Court emphasized in its July 3 Order, the mere conduit defense is an affirmative defense, and an affirmative defense—especially one which turns on a fact-intensive analysis of a party's good faith—is generally not an appropriate basis for dismissal at this stage. Were the Court to dismiss the Plaintiff's fraudulent transfer claims on the basis of this defense at this time, the Court would have to make the determination that as a matter of law, the Plaintiffs allegations affirmatively and clearly show that M & I acted in good faith.[9] The Court finds, however, that there is simply no basis in the Amended Complaint or the accompanying documents to conclude that as a matter of law, the Plaintiffs allegations affirmatively and clearly show that M & I acted in good faith.

■■■ M & I cites several decisions—none of which is binding on this Court—that purportedly support M & I's position that the Plaintiffs fraudulent transfer claims should be dismissed on the basis of the mere conduit defense. Particularly, M & I cites to Judge Hurley's decision in *Perlman v. Wells Fargo Bank, N.A.*, No. 10-81612-CV, 2012 WL 3289826 (S.D.Fla. Aug. 10, 2012). In *Perlman v. Wells Fargo*, Judge Hurley dismissed the plaintiff's fraudulent transfer claims based on the mere conduit defense, reasoning that "because banks have the 'right to assume that individuals who have the legal authority to handle [an] entity's accounts do not misuse the entity's funds,' ... the alleged atypical transactions and other red flags do not comprise 'facts or circumstances [that] would have induced an ordinarily prudent [bank] to make inquiry.'" 2012 WL 3289826, at *2 (quoting *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir.2003); *Waxenberg*, 611 F.Supp.2d at 1319). Although the Court does not dispute that this is an accurate statement of the law, the Court notes that in reaching his decision, Judge Hurley did not consider which party had the burden of pleading and proving the mere conduit defense. In fact, Judge Hurley's statement that the allegations were "insufficient to allege bad faith under the bad-faith exception to the mere conduit defense of a

---

8. The Court only considered whether it could determine at the motion to dismiss stage that M & I acted in good faith because the Plaintiff conceded that M & I lacked dominion and control over the alleged fraudulently transferred funds. *See* July 3 Order at 21.

9. It would, of course, be patently inappropriate at this stage in the proceedings for the Court to determine that as a matter of fact, M & I acted in good faith. Such a factual determination would be appropriate only on a motion for summary judgment stage or at trial.

fraudulent transfer claim" indicates that he may have erroneously placed the burden on the plaintiff to plead around the mere conduit defense. *Perlman v. Wells Fargo*, 2012 WL 3289826, at *2. This formulation fails to acknowledge that good faith is an element of the mere conduit defense which *the defendant* must plead and prove. In the context of a fraudulent transfer claim, the plaintiff never has the burden of pleading bad faith in order to negate the mere conduit defense—bad faith is not a defense to the mere conduit defense. Instead, a defendant who wishes to invoke the mere conduit defense must allege, and eventually prove, that he acted in good faith.

The correct placement of the burden of pleading is always critical and cannot be overlooked. In the context of a motion to dismiss, the defendant's burden of pleading an affirmative defense means that it will rarely be appropriate for a court to grant a motion to dismiss based upon an affirmative defense. This is especially true when the affirmative defense is comprised of factually intensive elements, such as good faith.[10] Here, the burden of pleading means that even assuming the Plaintiff failed to plausibly plead that M & I acted in bad faith,[11] such failure would not relieve M & I of its burden to affirmatively plead and prove both elements of the defense. This is because the absence of allegations of bad faith in the Plaintiff's Amended Complaint does not clearly demonstrate M & I's good faith. M & I must affirmatively prove its own good faith. Here, if the Court were to dismiss the Plaintiffs fraudulent transfer claims based

upon a finding that the Plaintiffs allegations affirmatively and clearly show that M & I acted in good faith, the Court would effectively be placing an inappropriate burden of pleading on the Plaintiff.

For the reasons discussed above, the Court finds that there is simply no basis in the Amended Complaint or the accompanying documents to conclude that as a matter of law, the Plaintiff's allegations, viewed in a light most favorable to the Plaintiff and taking into account M & I's duty to plead and prove the affirmative defense, affirmatively and clearly show that M & I acted in good faith. The Court therefore finds that it would be inappropriate at this stage in the proceedings to find that the mere conduit defense merits dismissal of Counts I–IV.

### III. *Count V: Aiding and abetting fraud*

In Count V of the Amended Complaint, the Plaintiff asserts a claim for aiding and abetting fraud against M & I. Specifically, the Plaintiff alleges that M & I "knew that [Petters] was perpetrating a fraud or engaging in other wrongful acts through the M & I Account" and that "M & I provided substantial assistances to the Petters Ponzi Scheme." Am. Compl. ¶¶ 195, 196. As a result of this alleged knowledge and conduct, the Plaintiff asserts that "M & I is responsible for all damages incurred by the Palm Beach Funds by virtue of the Petters Ponzi Scheme." Am. Compl. ¶ 197.

---

**10.** Certain affirmative defenses, such as the statute of limitations defense, do not depend on complex factual inquiries and are more definitively ascertainable from the face of a complaint or a document attached to a complaint, such as a contract. These defenses, as opposed to defenses which require the defen-

dant to prove he acted in good faith, will more frequently grounds for dismissal at the pleading stage.

**11.** The Court is not determining at this stage whether the Plaintiff has plausibly alleged that M & I acted in bad faith.

In its July 3 Order, the Court rejected the following arguments raised by M & I:(1) the doctrine of *in pari delicto* bars the Plaintiffs tort claims, including the Plaintiffs claim for aiding and abetting fraud; and (2) the Plaintiff failed to adequately allege that M & I had actual knowledge of the Petters Ponzi Scheme. July 3 Order, at 32–35. In the Motion to Dismiss now before the Court, M & I maintains its argument that the Plaintiff fails to plausibly allege that M & I had actual knowledge of the Petters Ponzi Scheme. Again, the Plaintiff argues that the "law of the case" doctrine prevents the Court from reconsidering the issue of whether the Plaintiff has adequately alleged M & I's knowledge. However, as previously stated, the "law of the case" doctrine does not preclude the Court from reconsidering any part of its July 3 Order.

"It is uncertain whether Florida recognizes a claim for aiding and abetting fraud." *Koch v. Royal Wine Merch., Ltd.,* —— F.Supp.2d ——, ——, 2012 WL 6045926, at *12 (S.D.Fla.2012) (citing *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.,* 917 So.2d 368, 371–72 (Fla. 5th DCA 2005)). If it does,[12] the Plaintiff must allege the following elements: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.,* 455 Fed.Appx. 904, 906 (11th Cir.2012) (citations omitted). Furthermore, "[i]n cases where a bank customer has perpetrated a fraudulent scheme, courts have widely held that the bank is not liable for aiding and abetting unless the bank has actual knowledge of its customer's wrongful activity." *Groom v. Bank of Am.,* No. 8:08–cv–2567–JDW–EAJ, 2012 WL 50250, at *4 (M.D.Fla. Jan. 9, 2012). M & I asserts that pursuant to Rule 9(b),[13] the Plaintiff fails to plausibly allege that M & I had actual knowledge of Petters Ponzi Scheme. After considering the most recent case law and the parties' extensive briefs, the Court agrees.

To begin with, the Plaintiff merely makes a general and conclusory allegation that "M & I knew that [Petters] was perpetrating a fraud or engaging in other wrongful acts through the M & I Account." Am. Compl. ¶ 195. "While the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud." *Lamm v. State Street Bank & Trust Co.,* 889 F.Supp.2d 1321, 1332 (S.D.Fla.2012) (internal quotations and citations omitted); *see also, Groom v. Bank. of Am.,* 2012 WL 50250, at *4 (citing *Rosner v. Bank of China,* 349 Fed.Appx. 637, 639 (2d Cir. 2009)); *Platinum Estates, Inc. v. TD Bank, N.A.,* No. 11–60670–CIV, 2012 WL 760791, at *3 (S.D.Fla. Mar. 8, 2012) ("conclusory statement that a defendant 'actually knew' [is] insufficient to support an aiding and abetting claim where the facts in the complaint only suggest[ ] that the defendant 'should have known that something was amiss.' "). The United States District Court for the Northern District of Texas considered and dismissed a similar claim for aiding and abetting fraud for

---

**12.** The Court does not decide whether a cause of action for aiding and abetting fraud exists in Florida because the Court finds that even if such a claim does exist, the Plaintiff fails to plausibly state a claim for relief.

**13.** As discussed above, Rule 9(b)'s heightened pleading standard applies to fraud claims, including claims for aiding and abetting fraud.

failure to adequately allege the "actual knowledge" element of the claim:

> Plaintiff sets out various facts she contends provided Defendant actual knowledge.... [The complaint] alleges Defendant had actual knowledge based on the reference to other events that do not, on their face, appear to demonstrate actual knowledge. Indeed, after a thorough review of Plaintiff's asserted facts that she contends establish actual knowledge, the Court fails to identify factual formulations that constitute actual knowledge. Plaintiff fails to allege that Defendant knew the Ponzi defendants were making false representations or stealing the investors' money based on the Ponzi defendants' representations. *In essence, the allegations are an artful manner of stating that Defendant should have known of the Ponzi defendants' actions.* Plaintiffs factual narrative is, at best, merely a story of suspicious activity that Plaintiff contends should have provided Defendant notice of the [P]onzi scheme. As such, this is not sufficient to satisfy the requirement of actual knowledge for aider and abettor liability.

*Litson–Gruenber v. JPMorgan Chase & Co.*, No. 7:09–CV–056–0, 2009 WL 4884426, at *3 (N.D.Tex. Dec. 16, 2009) (internal citations omitted) (emphasis added).

Here, the specific allegations made by the Plaintiff which purportedly support the general allegation that M & I had actual knowledge that Petters was perpetrating a fraud suggest only that M & I *should have known* that something was wrong. The Plaintiff asserts that M & I knew of the manner in which the Petters purchase financing transactions were conducted and of the "representations, recitals and responsibilities" contained in the DAMA. Am. Compl. ¶ 195. Neither of these allegations indicate that anyone at M & I had actual knowledge of Petters' fraud. In-stead, they merely suggest that M & I should have known of Petters' fraud had they been paying closer attention and looked into some of "suspicious" transactions.

Moreover, the Plaintiff states that M & I knew of Petters' fraud as a result of M & I's *"implied actual notice* that no funds flowed from any retailer customers and that instead, the M & I Account was funded primarily from phony suppliers and lender sources." *Id.* (emphasis added). The Plaintiffs use of the phrase "implied actual notice" is significant. Although the Plaintiff is correct in his assertion that implied actual notice is not the same as constructive notice, the Plaintiff fails to recognize that implied actual notice is also not the same as actual knowledge. In fact, implied actual notice is defined as "notice inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not [use], or as it is sometimes called implied actual notice." *First Fed. Sav. & Loan Ass'n of Miami v. Fisher*, 60 So.2d 496, 499 (Fla.1952); *see also Kapila v. Gunn (In re Gunn)*, No. 04–23331–BKC–RBR, 2005 WL 2445909, at *5 (Bankr.S.D.Fla. Jan. 12, 2005). Stated differently, " 'implied actual notice' requires (1) actual knowledge of (2) highly suspicious circumstances, coupled with (3) an unaccountable failure to react to them." *Shacket v. Philko Aviation, Inc.*, 841 F.2d 166, 170 (7th Cir.1988). These definitions reveal that implied actual notice necessarily signifies a lack of actual knowledge because implied actual notice is defined as having the means to *acquire* actual knowledge. For example, an individual with implied actual notice of fraudulent conduct has actual knowledge of suspicious circumstances and a duty to investigate further, but still lacks actual knowledge of the underlying fraud. Therefore, even assuming, as the Plaintiffs allegations might suggest,

that M & I had implied actual notice of Petters' fraud, such notice does not constitute the "actual knowledge" required in order to state a claim for aiding and abetting fraud.

 Furthermore, even assuming that implied actual notice constitutes actual knowledge for the purposes of aiding and abetting liability, the Plaintiff fails to plausibly allege that M & I had implied actual notice of the Petters' fraud—M & I had no duty to investigate its customer's banking activities and thus, did not have "means of knowledge" which it had a duty to use. *First Fed. Sav. & Loan Ass'n of Miami v. Fisher*, 60 So.2d at 499. "Florida law does not require banking institutions to investigate transactions." *Lawrence v. Bank of Am.*, 455 Fed.Appx. at 907 (holding that plaintiff's allegations that "the transactions were atypical and therefore Bank of America should have known of the Ponzi scheme" were insufficient to trigger aiding and abetting liability). In fact, a bank "has the right to assume that individuals who have the legal authority to handle the entity's accounts do not misuse the entity's funds." *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir.2003). Finally, although M & I agreed to provide more than "ordinary banking services" when it entered into the DAMA, as discussed more fully below, neither the terms of the DAMA nor the resulting "relationship" between M & I and the Palm

Beach Funds placed any duty upon M & I to investigate Petters business practices. In fact, the provisions of the DAMA permitted M & I to rely on any information given to it by Petters. Therefore, even assuming that implied actual notice is the equivalent of actual knowledge, M & I had no duty to investigate into its customer's business practices—even in the face of suspicious business transactions—and accordingly, had no implied actual notice.

For the reasons discussed above, the Plaintiff fails to adequately allege that M & I had actual knowledge of the Petters Ponzi Scheme. Accordingly, the Court will dismiss Count V without prejudice.

## IV. Counts VI and VII: Fraudulent inducement and fraudulent misrepresentation

 In Counts VI and VII, the Plaintiff asserts claims for fraudulent inducement and fraudulent misrepresentation,[14] respectively, against the Defendants, M & I and Flynn. Previously, the Court dismissed the Plaintiffs fraudulent inducement and fraudulent misrepresentation claims for failure to "identify with sufficient particularity: (1) the misrepresentations made by the Defendants were false at the time they were made; (2) how the Palm Beach Funds relied upon the misrepresentations; and (3) how the Palm Beach Funds were harmed as a result of their reliance on the misrepresentations."

---

14. The elements of fraudulent inducement and fraudulent misrepresentation are nearly identical, differing only in ways which are not relevant for the purposes of the Court's evaluation of the Defendants' Motion to Dismiss. *Gemini Investors III, L.P. v. Nunez*, 78 So.3d 94, 97 (Fla. 3d DCA 2012) (listing elements of fraudulent inducement); *Butler v. Yusem*, 44 So.3d 102, 105 (Fla.2010). To plead both fraud in the inducement and fraudulent misrepresentation, a plaintiff "must allege that the defendants: (1) made a statement concerning a material fact, (2) knowing that the

statement was false, (3) with intent that the plaintiffs act on the false statement; and (4) the plaintiffs were damaged as a result of their reasonable reliance on the false statement." *Gemini Investors*, 78 So.3d at 97. The Court notes that "[g]enerally, the fraudulent statement must concern a past or existing fact," but if the defendant "makes a future promise to perform with no intent of doing so, the requirement of a past or present fact does not apply." *Id.* (internal citations omitted)

July 3 Order at 18. The Defendants assert in the Motion to Dismiss currently before the Court that the allegations in the Amended Complaint remain deficient. The Court agrees.

 Claims for fraudulent inducement and fraudulent misrepresentation must meet the heightened pleading standard of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In order to state a claim for relief which satisfies Rule 9(b)'s heightened pleading standard, "a complaint must 'identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendants gain[ ] by the alleged fraud.'" *Travelers Prop. Cas. Co. of Am. v. Charlotte Pipe & Foundry Co.*, No. 6:11–cv–19–Orl–28GJK, 2012 WL 983783, at *6 (M.D.Fla. Mar. 22, 2012) (quoting *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed.Appx. 81, 86 (11th Cir.2008)); *see also, Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001). Additionally, "when multiple defendants are accused of misrepresentation, specific allegations are required as to each; a complaint should advise each defendant of the nature of his participation in the fraud." *Id.* (citing *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir.2007)); *see also, Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10–22153–CIV, 2011 WL 4434891, at *4 (S.D.Fla. Sept. 23, 2011) (dismissing plaintiffs fraudulent inducement claim for failing to detail "the required who, what, where, when, how of the

allegedly false statements and . . . to specify each [d]efendant's participation in the alleged fraud").

In Count VI, the Plaintiff alleges that the Defendants represented to the Palm Beach Funds that M & I would, based on a review of transaction lists provided by Petters (the "Transaction Lists"), transfer certain retailer monies which were deposited into the M & I Account to an account established by the Palm Beach Funds at M & I (the "Holdings Account"). Am. Compl. ¶ 200. This representation, according to the Plaintiff, was knowingly false at the time it was made. Am. Compl. ¶ 201. The Plaintiff alleges that this alleged misrepresentation is evidenced by the following: (1) an email dated February 18, 2008 (the "Flynn/Howse email") from Flynn to Craig Howse ("Howse"), an attorney representing the Palm Beach Funds, discussing a draft of the DAMA;[15] (2) upon information and belief, other communications that took place between M & I and Howse; (3) M & I's formal execution of the DAMA; and (4) the establishment of the Holdings Account for the sole purpose of receiving funds transferred by M & I pursuant to the DAMA. Am. Compl. ¶ 200.

In Count VII, the Plaintiff identifies two alleged misrepresentations: (1) that M & I would transfer retailer monies that were deposited into the M & I Account to the Holdings Account based on a review of the Transaction Lists; and (2) that the Holdings Account would have a limited purpose and would be funded only by transfers effectuated by M & I based on a review of Transaction Lists. Am. Compl. ¶¶ 207–08. The first alleged misrepresentation is evidenced, according to the Plaintiff, by the same facts which evidence the misrepre-

---

**15.** The Flynn/Howse email is quoted in the Amended Complaint on page 23, paragraph 98.

sentation alleged in Count VI. The Plaintiff alleges that the second alleged misrepresentation is evidenced by the following:

(a) upon information and belief, communications that took place between M & I and Howse during the period of February 14, 2008 through February 25, 2008; (b) M & I's formal execution of the [DAMA] on February 25, 2008; (c) the establishment of the Holdings Account for the sole purpose of receiving funds transferred by M & I pursuant to the [DAMA]; and (d) the prompt transfer of funds that were transferred to the Holdings Account to the account maintained by the Palm Beach Funds with U.S. Bank.

Am. Compl. ¶ 208.

■ Despite the above-recited allegations, the Plaintiff fails to allege the *precise* statements or misrepresentations made, the time and place of and persons responsible for the statements, to whom the statements were made, and how each defendant participated in the alleged fraud. The core of a fraudulent inducement or misrepresentation claim is the existence of a specific misrepresentation made by a defendant to a plaintiff which was false at the time it was made. A plaintiff asserting such a claim thus should be able to identify who made the statement, approximately when the statement was made, and to whom the statement was made. Here, however, there is no allegation regarding who made the alleged misrepresentation. There is no allegation regarding when or how the misrepresentation was made. There is no allegation identifying to whom the misrepresentation was made. There is no allegation distinguishing between M & I and Flynn and detailing the respective roles each played in the alleged fraud. Because of these deficiencies, Counts VI and VII fail to meet Rule 9(b)'s heightened pleading standard.

■ The Plaintiff asserts that in construing allegations of actual fraud in an action brought by a bankruptcy trustee, such as the Plaintiff here, Rule 9(b)'s heightened pleading standard must be relaxed in order to accommodate a trustee's inevitable lack of knowledge. Although the Court agrees in principle, relaxation of Rule 9(b)'s heightened standard does not save the Plaintiff's claims for fraudulent inducement and fraudulent misrepresentation for two reasons. First, as *discussed* above, relaxing Rule 9(b)'s pleading standard is only appropriate when the trustee in question suffers from a " 'lack of knowledge concerning the acts of fraud previously committed against the debtor, a third party.' " *In re Arizen Homes,* 2009 WL 393863, at *2. However, when a trustee does not suffer from this lack of knowledge, the need to relax Rule 9(b)'s heightened pleading standard does not exist, and the trustee will be held to the usual Rule 9(b) standard. Based upon the length of time the Plaintiff has been employed as the Palm Beach Funds' bankruptcy trustee and the amount of discovery taken in the main bankruptcy case and the various adversary proceedings, the Court finds that the Plaintiff does not suffer from the lack of knowledge which would justify relaxing Rule 9(b)'s heightened standard. Second, even when Rule 9(b)'s heightened standard is relaxed in the context of claims brought by bankruptcy trustees, the standard is only "somewhat" relaxed. " '[T]he person charged with fraud [must still] have a reasonable opportunity to answer the complaint and ... adequate information to frame a response.' " *In re Brandon Overseas,* 2010 WL 2812944, at *5 (quoting *In re Arizen Homes,* 2009 WL 393863, at *2). Relaxation of Rule 9(b)'s standard does not remove the requirement of particularity in

its entirety such that the Plaintiff need only meet Rule 8(a)'s standard.

For the reasons discussed above, the Court finds that Counts VI and VII—the Plaintiff's claims for fraudulent inducement and fraudulent misrepresentation—still fail to meet Rule 9(b)'s particularity requirement and must be dismissed.

### V. Count VIII: Conspiracy to commit fraud

■■■■■ The Plaintiff, in Count VIII, asserts a claim for conspiracy to commit fraud [16] against the Defendants, M & I and Flynn. Specifically, the Plaintiff alleges that upon information and belief, the Defendants conspired with Petters to fraudulently represent that both Petters and M & I would comply with the DAMA. Am. Compl. ¶¶ 217–19. The Plaintiff further alleges that "[u]pon information and belief, the Defendants and ... [Petters] committed conspiratorial acts in furtherance of this wrong." Am. Compl. ¶ 222. For the reasons discussed below, the Court finds that the Plaintiff's claim for conspiracy to commit fraud must be dismissed.

■■■■ There are several fatal flaws inherent in the Plaintiff's claim for conspiracy to commit fraud. First, the Plaintiffs claim for conspiracy to commit fraud must be dismissed because the Plaintiff fails to properly plead his underlying fraud claims.

"[B]ecause a civil conspiracy claim is not an independent cause of action in Florida," if a court dismisses the predicate claim, such as the Plaintiff's claim for fraud here, the court must also dismiss the conspiracy claim. *Behrman v. Allstate Life Ins. Co.*, 178 Fed.Appx. 862, 863 (11th Cir.2006); *Marlborough Holdings Grp., Ltd. v. Azimut–Benetti, Spa*, No. 11–14932, 2013 WL 375178, at *6 (11th Cir. Jan. 13, 2013) (holding that "a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim"); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir.2007); *see also, Begualg Inv. Mgmt.*, 2011 WL 4434891, at *6.[17]

■■■■ Second, the Plaintiff fails to plead with the requisite specificity "the required who, what, where, when, how of the alleged conspiracy." *Begualg Inv. Mgmt.*, 2011 WL 4434891, at *6. For instance, the Plaintiffs conclusory allegation that "[u]pon information and belief, the Defendants and ... [Petters] committed conspiratorial acts in furtherance of this wrong" is not sufficient. "The doing of some overt act in pursuance of the conspiracy" is a necessary element of a claim for conspiracy, and the Plaintiff must identify specific acts done in furtherance of the conspiracy. Pleading this element "upon information and belief" is also not sufficient in this context because the subject matter of this

---

**16.** In order to state a claim for civil conspiracy, the Plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir.2009). Furthermore, as the Plaintiff's conspiracy claim is based upon fraud, the Plaintiff must meet the heightened pleading standard of Rule 9(b).

**17.** Although the Court makes no findings as to which state's law applies, the Court does note that in the context of pleading civil conspiracy, the law of both Florida and Minnesota is the same. *Harding v. Ohio Cas. Ins. Co. of Hamilton, Ohio*, 230 Minn. 327, 41 N.W.2d 818, 825 (1950) (reaching the same result under Minnesota law—"there can be no recovery for conspiracy unless substantive wrongs are pleaded"); *Pugh v. Westreich*, No. A04–657, 2005 WL 14922, at *4 (Minn.Ct. App. Jan. 4, 2005) (holding that "[b]ecause appellant's complaint fails to state a claim on her first three causes of action, the cause of action for conspiracy also fails").

element does not fall within the category of subject matter which is uniquely within the adverse party's knowledge or control.

■■■ Finally, although the Plaintiff has chosen to assert his claim for conspiracy to commit fraud against both Defendant M & I and Defendant Flynn, the Plaintiff fails to distinguish between the two defendants in order specify each Defendant's participation in the alleged conspiracy to commit fraud. In fact, not once within Count VIII does the Plaintiff refer to either "M & I" or "Flynn"—the two are simply lumped together as "Defendants" throughout the claim. This is not sufficient to meet the notice pleading requirements of Rule 8(a) as neither Defendant is on notice of its role in the alleged conspiracy.

For the reasons just discussed, the Court finds that the Plaintiff fails to state a claim for conspiracy which is plausible on its face, and therefore, Count VIII must be dismissed.

## VI. *Count X: Gross negligence*

In Count X, the Plaintiff asserts a claim for gross negligence against M & I, the core of which focuses on the Holdings Account. Specifically, the Plaintiff alleges that:

232. M & I understood that the ... Holdings Account would be funded exclusively by M & I following a review of [T]ransaction [L]ists provided by Petters.

233. In opening the limited purpose Holdings Account, M & I assumed responsibility to exercise due care in connection with the transfer of monies to the Holdings Account based on a review of [T]ransaction [L]ists provided by Petters.

234. As a result, a special relationship existed between M & I and the Palm Beach Funds, and M & I owed a duty of care to the Palm Beach Funds[.]

235. M & I breached its duty ... by failing to disclose that (a) it was transferring monies to the Holdings Account without reference to any [T]ransaction [L]ists provided by Petters ... [as] contemplated under[ ] the [DAMA]; (b) the Holdings Account was being funded by Petters rather than M & I; (c) the Holdings Account was being funded by monies received in the [PCI] Account from other [sources] ... rather than a collection of receivables from retailers; and (d) M & I knew that Petters was perpetrating a fraud or engaging in other wrongful acts through the [PCI] Account.

Am. Compl. ¶¶ 232–35. In its July 3 Order, the Court discussed at great length the terms of the DAMA and concluded that M & I's limited duty to act—and thus, its duty to act carefully—never arose. For the reasons discussed below, the Court finds that the Plaintiff still fails to plausibly allege a duty of care as the text of the DAMA has not changed and the Plaintiff's allegations are simply an attempt to plead around the Court's previous holding that M & I's duty of care never arose.

According to the terms of the DAMA, from time to time funds came into the PCI Account in connection with Petters' purchase financing operation. Some of these funds should have been paid to one of "several financial entities ... designated as third party beneficiaries (the Protected Parties)." Am. Compl. Ex. 1. PBFP Holdings and PBF I were each named as Protected Parties. *Id.* at ¶ 1(b). The stated purpose of the DAMA was to "provide legal assurance to the Protected Parties that deposits into the [PCI Account] which should have been paid into a Protected Part[y's] lock box or directly to a Protect-

ed Party [were] held for the benefit of the Protected Party and [would] be immediately transferred to the Protected Party[ ]." *Id.* at ¶ 1(a).

M & I had the express duty to "manage and control [the PCI] Account in accordance with the guidelines and procedures established by [the DAMA.]" *Id.* at ¶ 1(d). According to the guidelines and procedures established by the DAMA, PCI was required to:

> provide to each Protected Party and M & I at least once each week (or more often if necessary to enable M & I to discharge is obligations hereunder), a list of all Transactions funded by a Protected Party with respect to which payment may be received by M & I for deposit in the Deposit Account (Transaction List). This Transaction List shall include the name of the purchaser or obligor, the purchaser's payor bank and the banking coordinates, the purchase order date and number, the invoice date and number, the payment due date, and the Protected Party which has financed the Transaction and the amount financed by the Protected Party.

*Id.* at ¶ 2(b). Upon receiving a Transaction List, M & I was required to:

> compare each payment received by wire transfer or otherwise to the most recently received Transaction List provided to it by Petters and ... automatically transfer each payment on a Transaction funded by a Protected Party to an M & I account established by and for the

benefit of each Protected Party as required herein.

*Id.* at ¶ 2(c). In performing these limited duties under the DAMA, M & I was "entitled to rely ... upon any [writing or other message] received by M & I from Petters and reasonably believed by M & I to be genuine and correct and to have been signed, sent or made by an authorized person." *Id.* at ¶ 6(a)(ii).

The DAMA also required each Protected Party to "establish an account with M & I into which M & I [was to] transfer moneys on deposit in the Deposit [A]ccount which are to be released to the Protected Party as provided in Section 2(c)." *Id.* at ¶ 3. In order to comply with this provision, the Palm Beach Funds opened the Holdings Account. There is no language in the DAMA which provides that M & I would be the *only* party permitted to transfer money into the accounts established by the Protected Parties. Nevertheless, the Plaintiff alleges that M & I understood that the Holdings Account would be funded exclusively by M & I following a review of Transaction Lists.[18]

■ Despite the Plaintiffs continued assertions to the contrary, the contractual language of the DAMA is clear: M & I merely undertook an obligation to provide the limited service described above, which was conditioned upon the receipt of Transaction Lists.[19] M & I did not undertake a general obligation to monitor the PCI Account or Petters' business practices, and the parties did not agree that M & I would

---

**18.** The Court's "duty to accept the facts in the complaint as true does not require [the Court] to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205–06 (11th Cir.2007) (citing *Associated Builders,*

*Inc. v. Ala. Power Co.,* 505 F.2d 97, 100 (5th Cir.1974)).

**19.** In fact not only does the language of the DAMA indicate that M & I's duties arose only upon receipt of a Transaction List, but it also indicates that it would have been impossible for M & I to perform its duties without having received any Transaction Lists.

be the only party permitted to transfer funds into the Holdings Account.[20] Although the Plaintiff asserts that M & I assumed a duty of care in connection with the transfer of monies to the Holdings Account based on a review of Transaction Lists provided by Petters, this duty simply never arose. According to the plain language of the DAMA, M & I's limited duty to act was conditioned upon, and thus did not arise until, the receipt of a Transaction List provided by Petters.

 Here, the Plaintiff did not allege in the Amended Complaint that M & I received a Transaction List from Petters. In fact, the Plaintiff alleges that M & I was transferring money into the Holdings Account "without ... receiving weekly [T]ransaction [L]ists from Petters." Am. Compl. ¶ 138. Because it is clear from the Plaintiff's allegations that M & I never received a Transaction List, M & I's duty to act pursuant to the terms of the DAMA never arose as a matter of law. Because M & I's duty to perform never arose, M & I's duty of care never arose.[21]

 Finally, although not raised by M & I in its Motion to Dismiss, the Plaintiff fails to allege the type of culpable behavior necessary to maintain a claim for *gross* negligence. "Florida law defines 'gross' negligence as 'an act or omission that a reasonable, prudent person would know is likely to result in injury to another.'" *NOB Holdings Corp. v. Liberty Mut.*

*Ins. Co. (In re PSN USA, Inc.),* 426 B.R. 916, 922 (Bankr.S.D.Fla.2010) (quoting *Eller v. Shova,* 630 So.2d 537, 540 n. 3 (Fla. 1993)). In other words, "gross negligence must be predicated on a showing of *chargeable knowledge* or awareness of the imminent danger spoken of" and "the act of omission complained of must occur in a manner which evinces a *conscious disregard of consequences,* as distinguished from a careless disregard thereof (as in simple negligence) or from the more extreme willful or wanton disregard thereof (as in culpable or criminal negligence)." *Tran v. Waste Mgmt., Inc.,* 290 F.Supp.2d 1286, 1294 (M.D.Fla.2003). There is nothing in the Plaintiffs allegations that distinguishes it from a claim for ordinary negligence or indicates a "conscious disregard of the consequences."

For the reasons discussed above, the Court finds that the Plaintiff fails to state a claim for gross negligence which is plausible on its face. As a result, Count X must be dismissed.

## VII. *Count IX: Breach of fiduciary duty*

In its July 3 Order, the Court dismissed the Plaintiff's breach of fiduciary duty claim asserted against M & I for failure to sufficiently allege that M & I owed a fiduciary duty to the Palm Beach Funds. Although the Plaintiff, in his Amended Com-

---

**20.** As previously discussed in the July 3 Order, M & I was only required to hold "Protected Party Funds ... in trust for the Protected Party to whom the funds [were] required to be paid." Am. Compl. Ex. 1 ¶ 1(a). The DAMA expressly contemplated that other deposits into the PCI Account would be made by and for the benefit of PCI and that "[s]uch deposits [were] not [to be] held in trust for the Protected Parties." *Id.* at ¶ 1(c). The terms of the DAMA permitted PCI to "withdraw or direct the transfer of moneys which [did] not

comprise Protected Party Funds from the [PCI] Account at any time." *Id.* at ¶ 1(e).

**21.** It is true that "[w]henever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service ... thereby assumes a duty to act carefully." *Clay Elec. Co-op., Inc. v. Johnson,* 873 So.2d 1182, 1186 (Fla.2003). However, it is axiomatic that a plaintiff has no duty to act carefully if he had no duty to act at all.

plaint, attempts to correct the pleading deficiencies identified by the Court in the July 3 Order, the Court agrees with M & I and finds that the Plaintiff still fails to plausibly allege that M & I owed a fiduciary duty to the Palm Beach Funds.

In order to state a claim for breach of fiduciary duty, the Plaintiff must allege the existence of a fiduciary duty owed by M & I to the Palm Beach Funds. "A fiduciary relationship may be either express or implied." *Hogan v. Provident Life and Accident Ins. Co.*, 665 F.Supp.2d 1273, 1287 (M.D.Fla.2009) (citing *Maxwell v. First United Bank*, 782 So.2d 931, 933 (Fla. 4th DCA 2001)). An implied fiduciary duty is " 'premised upon the specific factual situation surrounding the transaction and the relationship of the parties' and exist[s] where 'confidence is reposed by one party and a trust accepted by the other.' " *Id.* (internal citations omitted); *see also, Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F.Supp.2d 1064, 1071 (S.D.Fla.2003). Stated differently, "[i]n order for a confidential or fiduciary relationship to exist under Florida law, there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party." *Lanz v. Resolution Trust Corp.*, 764 F.Supp. 176, 179 (S.D.Fla.1991) (citing *Cripe v. Atlantic First Nat. Bank*, 422 So.2d 820 (Fla.1982)). The mere fact that "one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Id.* (citing *Harris v. Zeuch*, 103 Fla. 183, 137 So. 135 (1931)).

In his Amended Complaint, the Plaintiff alleges the existence of an implied fiduciary duty owed by M & I to the Palm Beach Funds:

The Palm Beach Funds placed trust and confidence in M & I to open the limited purpose Holdings Account that would be funded exclusively by M & I based on a review of [T]ransaction [L]ists provided by Petters.

... M & I accepted the trust and confidence placed in it by the Palm Beach Funds as evidenced by (a) the Flynn/Howse [Email]; (b) upon information and belief, other conversations that took place between Flynn or other persons acting on behalf of M & I and Howse during the period of February 14, 2008 through February 25, 2008; (c) its actual execution of the [DAMA] on February 25, 2008; and (d) the establishment of the Holdings Account for the sole purpose of receiving funds transferred by M & I pursuant to the [DAMA].

Am. Compl. ¶¶ 227, 228. The conclusory statement that "M & I accepted the trust and confidence placed in it by the Palm Beach Funds" is insufficient to allege the existence of a fiduciary duty. Furthermore, the "evidence" recited by the Plaintiff of M & I's acceptance of the trust and confidence placed in it by the Palm Beach Funds also fails to plausibly allege the existence of an implied fiduciary duty. As discussed below, the "evidence"—especially read in the context of the DAMA—does not allow the court to draw the *reasonable inference* that M & I accepted in any way the trust and confidence the Palm Beach Funds allegedly placed in it. *Iqbal*, 556 U.S. at 663, 129 S.Ct. 1937, 173 L.Ed.2d 868.

To begin with, "[u]nder Florida law, banks ordinarily do not owe fiduciary duties to their customers." *Lamm v. State Street Bank*, 2012 WL 3828287, at *7 (citing *Jaffe v. Bank of America, N.A.*, 667 F.Supp.2d 1299, 1319 (S.D.Fla.2009)). Thus, the Palm Beach Funds' establishment of the Holdings Account, at which

time the Palm Beach Funds became M & I's customers, did not, without more, impose a fiduciary duty on M & I. More importantly, all of the "evidence" cited by the Plaintiff relates to the drafting and execution of the DAMA.[22] As discussed extensively in the Court's July 3 Order, the terms of the DAMA do not establish in any way that M & I's role was anything more than ministerial:

> Per the terms of the DAMA, M & I never expressly undertook a duty to act as a fiduciary to the Palm Beach Funds. M & I undertook an obligation to provide a limited service to [Petters] and the Palm Beach Funds—transferring money from the PCI Account to the appropriate Protected Party whenever a Transaction List provided by [Petters] indicated that money belonging to a Protected Party had been erroneously deposited into the PCI Account. M & I had no discretion over which funds were transferred, and in transferring funds, M & I was entitled to rely entirely on the information provided to it by [Petters]. M & I's role was essentially ministerial. Furthermore, to the extent that M & I undertook a duty to act as "custodian" of the PCI Account for the benefit of [Petters] and the Protected Parties, this duty would have related only to funds belonging to a Protected Party which, as indicated on a Transaction List, were erroneously deposited into PCI's Account. Thus, any duty M & I had to act as "custodian" of erroneously deposited funds never arose because the Complaint does not allege that

[Petters] provided M & I with a Transaction List.

July 3 Order at 15–16. It is implausible that the execution of the DAMA, a contract which imposed no fiduciary duty on any party, and discussions relating to the DAMA would help establish the existence of an implied fiduciary duty. The Court therefore finds that the Plaintiff fails to plausibly allege that M & I accepted the trust and confidence allegedly placed in it by the Palm Beach Funds.

Accordingly, the Plaintiff's breach of fiduciary duty claim must be dismissed as the Plaintiff fails to plausibly allege the existence of a fiduciary duty.

## VIII. Conclusion

For the reasons discussed in the preceding sections, the Court denies the Defendants' Motion to Dismiss to the extent that it seeks dismissal of Counts I, II, III, and IV. The Court grants the Defendants' Motion to Dismiss to the extent that that Counts V, VI, VII, VIII, IX, and X fail to state claims for relief which are plausible on the face of the Amended Complaint.

The Court dismisses Counts V, VI, VII, VIII, IX, and X without prejudice to the Plaintiff filing a second amended complaint which complies with the terms of this Order. In the event the Plaintiff elects to file a second amended complaint and the Defendants file a motion to dismiss that complaint, the Court shall not consider any new arguments which could have been raised in previous motions to dismiss.[23]

---

**22.** The Flynn/Howse Email is an email sent by Flynn to Craig Howse, an attorney representing the Palm Beach Funds. Am. Compl. ¶¶ 57, 98. The email, quoted in paragraph 98 of the Amended Complaint, relates exclusively to Howse's draft of the DAMA. It is plausible to infer that any other conversations that may have taken place from February 14, 2008 through February 25, 2008 between Howse

and Flynn or other M & I representations also related to the DAMA.

**23.** However, the Court may consider arguments raised by the Defendants' current Motion to Dismiss which were not addressed by the Court in this Order as a result of the Court's finding that certain claims fail to meet

Finally, should the Plaintiff file a second amended complaint which fails to comply with the terms of this Order or the Court's July 3 Order, the complaint shall be dismissed with prejudice.

### ORDER

The Court, being fully advised in the premises and for the reasons discussed above, hereby **ORDERS AND ADJUDGES** that:

1. The Defendants' Motion to Dismiss (ECF No. 72) is **GRANTED IN PART and DENIED IN PART.**

2. The Defendants' Motion to Dismiss is **DENIED** with respect to Counts I, II, III, and IV.

3. The Defendant's Motion to Dismiss is **GRANTED** with respect to Counts V, VI, VII, VIII, IX, and X.

4. Counts V, VI, VII, VIII, IX, and X are **DISMISSED WITHOUT PREJUDICE** to the Plaintiff filing a Second Amended Complaint within 14 days which complies with the terms of this Order.

the minimum pleading requirements of Rule 8(a) or Rule 9(b).