On motion for rehearing
 

 RAMIREZ, J.
 

 We deny the appellees’ motion for rehearing, but substitute the following opinion for our previous opinion.
 

 Gemini Investors III, L.P. and Ticonderoga SBIC, L.P. (“plaintiffs”) appeal from an order dismissing their complaint against ABC Distributing, LLC, Michael Nunez, Victoria Ranger, David James Holt, and Luis Peleja. We reverse because the fifth amended complaint sufficiently pled claims for fraudulent misrepresentation and securities act violations.
 

 Plaintiffs sued ABC Distributing, Nunez, Ranger, Holt and Peleja (collectively, “defendants”) for damages arising from the purchase of stock. ABC Distributing is a mail order catalog business. Nunez was its president, Ranger was Nunez’ girlfriend, while Holt was warehouse operations vice president and Peleja a former
 
 *96
 
 employee of ABC Distributing. Nunez incorporated DDU Express, Inc. to provide shipping services to ABC Distributing. Nunez was the controlling shareholder of DDU Express. He had also personally guaranteed a $2 million line of credit for DDU Express.
 

 In the spring of 2004, defendants learned that ABC Distributing would be consolidating or merging its operations with its sister corporation in Chicago, Illinois in the near future. The sister corporation, LTD Distributing, already had parcel consolidation and drop shipping contracts in place with another company, APX Shipping. Knowing that this significant change was imminent, defendants approached plaintiffs about investing in DDU Express. At that time, ABC Distributing had a contract with DDU Express, which ran until the end of 2005, and represented about 60 percent of DDU Express’s business. Nunez told Gemini of the business arrangement between ABC Distributing and DDU Express, and also caused ABC Distributing to extend the DDU Express contract to 2008. In November, 2004, Gemini paid $7 million for 75 percent of DDU Express’s stock.
 

 In its complaint, Gemini contended that Nunez fraudulently induced it to invest in DDU Express by vouching that ABC Distributing intended to continue doing business with DDU Express. During the due diligence period, plaintiffs spoke with Nunez in his capacity as President of ABC Distributing, and he affirmatively vouched for the quality of DDU Express’ performance and the fact that ABC Distributing intended to continue doing business with DDU as reflected in the parties’ contract and its recent extension. Additionally, plaintiffs alleged that Nunez failed to disclose crucial information which would have affected plaintiffs’ decision to invest in DDU Express. The undisclosed information included Nunez’ involvement with DDU Express, his romantic relationship with Ranger, the overlap in shareholders and management between DDU Express and ABC Distributing, and the imminent plans to move and consolidate ABC Distributing’s South Florida operations with those of its sister corporation in Chicago, which would not be using DDU Express for shipping.
 

 By March, 2005, problems began emerging between ABC Distributing and DDU Express. ABC Distributing reduced the volume of its business with DDU Express. Also, ABC Distributing terminated Nunez’ employment and objected to Nunez’ oral modification to the parties’ contract regarding shipping rates. This post-Nunez ABC Distributing now claimed that DDU Express had been overpaid by $2 million, and unilaterally began withholding payment to DDU Express as a credit toward the alleged overpayment. Despite Gemini’s further infusion of funds, in December, 2005, ABC Distributing terminated its relationship with DDU Express. Having lost 60% of its annual revenues, DDU Express closed.
 

 DDU Express sued ABC Distributing for breach of contract, breach of the covenant of good faith and fair dealing, promissory and equitable estoppel, and unjust enrichment. After discovery, DDU Express obtained leave to amend its complaint to add the individual defendants, and claims for RICO, Florida Securities Act violations, and fraud in the inducement. Upon defendants’ motion to dismiss, the trial court ordered plaintiffs to further amend the RICO claims, which plaintiffs did. Defendants again moved to dismiss. After extensive argument and briefing, the then presiding judge, Judge Scott Silverman, entered a comprehensive 28-page order: (1) dismissing the RICO claims; (2) allowing the fraudulent induce
 
 *97
 
 ment claims against the individual defendants, but dismissing the fraudulent inducement against ABC Distributing for insufficient allegations of an agency relationship between Nunez and ABC Distributing; (3) dismissing the securities act claim against ABC Distributing, but allowing the claim against the individual defendants; (4) allowing the original counts against ABC Distributing; and (5) giving plaintiffs leave to amend further the complaint.
 

 Plaintiffs filed their fifth amended complaint accordingly, excluding the RICO claims in accordance with Judge Silver-man’s rulings. They re-pled the exact same claims that Judge Silverman allowed, and again the defendants moved to dismiss. A successor judge then entered the order appealed from which dismissed all of plaintiffs’ claims, including those previously allowed by Judge Silverman, with the only exception being the breach of contract claim against ABC Distributing.
 

 On appeal, plaintiffs contend that the trial court erred in dismissing the claims for fraud in the inducement and securities act violations. We review the order granting a motion to dismiss de novo, taking the factual allegations of the complaint as true regardless of whether they may later be proven at trial.
 
 See Siegle v. Progressive Consumers Ins. Co.,
 
 819 So.2d 732, 734-35 (Fla.2002);
 
 Lopez-Infante v. Union Cent. Life Ins. Co.,
 
 809 So.2d 13, 15 (Fla. 3d DCA 2002). Furthermore, while a successor judge has the authority to correct any errors in prior inter locutory rulings on matters of law,
 
 see Tingle v. Dade Cnty. Bd. of Cnty. Comm’rs,
 
 245 So.2d 76, 77 (Fla.1971), “a successor judge should give credence to a predecessor’s rulings on issues of law.”
 
 Raymond, James & Assocs., Inc. v. Zumstorchen Inv., Ltd.,
 
 488 So.2d 843, 845 (Fla. 2d DCA 1986). Generally, the rotation of judges from one division to another should not be an opportunity to revisit the predecessor’s rulings. Here, the successor judge did not articulate any reason for revisiting Judge Silverman’s detailed and considered rulings.
 

 To plead fraudulent inducement, Gemini must allege that the defendants: (1) made a statement concerning a material fact, (2) knowing that the statement was false, (3) with intent that the plaintiffs act on the false statement; and (4) the plaintiffs were damaged as a result of their reasonable reliance on the false statement.
 
 See Lopez-Infante,
 
 809 So.2d at 15;
 
 Gutter v. Wunker,
 
 631 So.2d 1117, 1118 (Fla. 4th DCA 1994);
 
 Johnson v. Davis,
 
 449 So.2d 344, 348 (Fla. 3d DCA 1984). Generally, the fraudulent statement must concern a past or existing fact.
 
 Mejia v. Jurich,
 
 781 So.2d 1175, 1177 (Fla. 3d DCA 2001). But, if the person making the representation has superior knowledge of the subject matter, or makes a future promise to perform with no intent of doing so, the requirement of a past or present fact does not apply.
 
 Id.; see also Telesphere Int’l, Inc. v. Scollin,
 
 489 So.2d 1152, 1154 (Fla. 3d DCA 1986).
 

 The securities act violation claims are based on section 517.301(l)(a), Florida Statutes (2004), which makes it unlawful for a person to “employ ... artifice to defraud,” or use “any untrue statement of a material fact or any omission ... [to] mislead[]” in connection with the sale of any investment or security. Therefore, the elements of proof required for these claims are similar to fraudulent inducement.
 

 Here, plaintiffs sufficiently alleged all elements required for pleading fraudulent inducement and violation of the securities act. Plaintiffs alleged that the defendants had superior knowledge which
 
 *98
 
 plaintiffs did not know and could not have discovered through due diligence. Specifically, plaintiffs alleged that they were unaware of the interrelationship between ABC Distributing and DDU Express, and did not know the extent of Nunez’ financial stake in DDU Express. Also, Nunez, as ABC Distributing’s president, knew of ABC Distributing’s intentions to relocate to Chicago and the effect this would have on the contract with DDU Express. Because the ABC Distributing contract was a major portion of DDU Express’s business, the concealment of this information was crucial.
 

 Accordingly, because plaintiffs were misled regarding facts material to the transaction known by defendants due to superior knowledge, which defendants concealed, the complaint sufficiently pled claims for fraudulent misrepresentation and securities act violations, and the trial court erred in dismissing these claims. We, therefore, reverse the order dismissing plaintiffs’ claims for fraudulent inducement and violation of the securities acts, and remand for further proceedings in accordance with this opinion.
 

 Reversed and remanded.