# Third District Court of Appeal

**State of Florida**

Opinion filed April 08, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-1570
Lower Tribunal No. 13-16523
_____


**Thomas DePrince,**
Appellant,

vs.

**Starboard Cruise Services, Inc.,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Darrin P. Gayles, Judge.

Cohen Ruiz P.A., and Mario M. Ruiz, for appellant.

Isicoff, Ragatz & Koenigsberg, and Eric D. Isicoff and Carolina A. Latour, for appellee.


Before ROTHENBERG, LAGOA, and FERNANDEZ, JJ.

ROTHENBERG, J.

Thomas DePrince ("DePrince") appeals the trial court's order granting summary judgment in favor of Starboard Cruise Services, Inc. ("Starboard") on DePrince's claims against Starboard for breach of contract, specific performance, and conversion. Because we find that disputed issues of material fact remain to be resolved on all three counts of DePrince's complaint, we reverse and remand for further proceedings.

Historical Hollywood starlet Mae West once said, "I never worry about diets. The only carrots that interest me are the number of carats in a diamond." Thus, it appears quite likely that Ms. West would have been interested in the diamond in this case: a twenty carat diamond that Starboard offered to DePrince for a very low sum. As it turns out, the "too good to be true" price of the diamond was just that, and the price conveyed to DePrince was a mistake. Now DePrince wants his twenty carat diamond; Starboard wants out of its sales contract; and Starboard's supplier, who allegedly misquoted the price of the diamond upon which Starboard and DePrince relied, has not even been added as a party to the lawsuit. In short, this is truly a gem of a case.

## FACTUAL BACKGROUND

DePrince embarked on a cruise from Miami in February 2013. During that cruise, DePrince visited an onboard jewelry shop that is wholly owned and operated by Starboard. When DePrince expressed some interest in a large loose

2

diamond[1] and specified to the sales manager of the store, Mihai Rusan ("Rusan"), that the stone should be between 15 and 20 carats, Rusan, who had never dealt with a diamond of such magnitude, sent an email inquiry to Starboard's corporate office in Miami ("the Miami Office").

Starboard maintains a consignment agreement with a supplier, Sophia Fiori ("Fiori"),[2] that allows Starboard to obtain gemstones and jewelry for sale in its onboard stores. The consignment agreement between Starboard and Fiori specifies, in relevant part:

> 3. Title to the Consigned Merchandise shall at all times remain with Consignor until the time of its sale to customers of Consignee, whereupon the Consigned Merchandise shall be deemed to have been purchased from Consignor by Consignee.[3]

Upon receiving the email inquiry from Rusan, the Miami Office relayed the information to Fiori to determine whether Fiori could fill such an order should DePrince decide to purchase a diamond. Fiori responded to the Miami Office via email, informing Starboard that there were two diamonds of that size available. Fiori's email described the diamonds precisely as follows:

1.  **EMERALD CUT 20.64 carats D VVS2 GIA  VG Price $235,000**

---

[1] A "loose diamond" refers only to the gemstone itself, rather than a gemstone that is a component of a larger piece of jewelry.

[2] Fiori is the business name for the corporation Elba Jewelry, Inc.  DePrince refers to the supplier of the diamond as Elba Jewelry throughout his brief, but we will refer to it as "Fiori" in this opinion.

[3] "Consigned Merchandise" refers to the jewelry items ordered by Starboard; the "Consignor" refers to Fiori; and the "Consignee" refers to Starboard.

3

**2. EMERALD CUT 20.73 carats E VVS2 GIA EX EX FNT Price $245,000**

The Miami Office relayed this information to Rusan via email exactly as Fiori had typed it. Rusan notified DePrince of the availability of the size of the diamond he was interested in purchasing and the pricing information contained in the email, telling him that the purchase prices for the diamonds were $235,000 and $245,000 respectively.

DePrince told Rusan that he was interested, but that he would like to take some time to think about the purchase. That night, DePrince spoke with his life partner, Vernon Crawford, a certified gemologist who was on the cruise with DePrince, and also DePrince's sister, Carolyn DePrince, who holds the highest available degree in gemology. Both advised DePrince against making the purchase, telling him that the sale price was too good to be true and that the price for a diamond that large should be at least $2 million.

DePrince, however, ignored their advice and opted to complete the transaction. DePrince returned to Starboard's onboard jewelry store and placed a special mail purchase order for the 20.64 carat diamond the next day. Rusan prepared and signed a one-page sales agreement that listed the total price for the diamond at $235,000 plus a $25 shipping charge. DePrince made an initial down payment of $125,000 on the spot and paid the balance ($110,025) the next day. The parties agreed to have the diamond shipped to the Gemological Institute of

America laboratory in New York so that a neutral gemologist could verify that the diamond that was shipped was the same one specified in the sales agreement.

Soon after the sale was completed, Starboard learned that Fiori's $235,000 price quote in the email was the **per carat** price for the diamond rather than the **total price** for the diamond ($4,850,400), and thus, Starboard had inadvertently contracted to sell the diamond to DePrince for less than 1/20th of the diamond's actual value. Five days after the sales agreement was executed, Starboard contacted DePrince via telephone to explain the situation, stating that the price on the sales agreement was "seriously in error" due to the mix-up in the email. Starboard offered discounted future cruise rates to DePrince to compensate him for the inconvenience, but DePrince demanded that the sale be completed as specified in the sales agreement. Starboard unilaterally reversed the charges on DePrince's credit card to refund him all the money he had paid and then repudiated the sales agreement, informing DePrince that it would not be shipping the diamond as they had originally agreed. These communications were memorialized in an email Starboard sent to DePrince after the phone call. The record does not disclose how Starboard dealt with the cancellation of the sale with regard to Fiori.

Thereafter, DePrince filed a complaint against Starboard alleging counts for specific performance, breach of contract, and conversion. Starboard answered and pleaded the affirmative defense of unilateral mistake, among others, claiming that

5

Rusan had misquoted DePrince the total price of the diamond rather than the per carat price and that DePrince had known about the error the whole time due to his extensive experience with jewelry. Starboard also counterclaimed for a declaratory judgment that the sales agreement was unenforceable and for rescission of the contract.

Starboard moved for summary judgment on the ground that there had clearly been a unilateral mistake in the pricing, and, after hearing argument on that issue, the trial court granted summary judgment against DePrince on all his claims. Specifically, the trial court ruled at the summary judgment hearing:

> I don't find that the plaintiff has established that there were any actionable damages and I don't find that there was a valid and enforceable contract for either the breach of contract or the conversion count. Particularly as to conversion, I don't find that the plaintiff or the defendant ever – there's no record evidence that the plaintiff possessed the diamond, as opposed to remaining in the possession of the vendor. I find, quite frankly, that it may be unconscionable to enforce this particular contract.

This appeal followed.

## ANALYSIS

"[A] party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought." Moore v. Morris, 475 So. 2d 666, 668 (Fla. 1985). Summary judgment is only appropriate when an examination of the facts in the light most favorable to the

non-movant demonstrates that the movant is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510(c); Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

The trial court granted summary judgment against DePrince on his breach of contract action due to its finding that there had been a unilateral mistake of fact sufficient to rescind the otherwise-enforceable contract, enforcement of the contract would be "unconscionable," and DePrince had not alleged any actionable damages. On DePrince's claim for specific performance, the trial court found that the diamond was not unique and was therefore not the proper subject of the remedy of specific performance. And as to DePrince's conversion claim, the trial court granted summary judgment in Starboard's favor based on its finding that Starboard never had possession of the diamond.

We do not agree with the trial court that there are no genuine issues of material fact such that Starboard is entitled to judgment as a matter of law on any of these claims. Thus, Starboard was not entitled to summary judgment.

I.    **Contract Formation and Enforcement**

On appeal, Starboard has raised two defenses to the sales agreement's formation and enforcement. First and primarily, Starboard claims that a unilateral mistake of law prevents the contract from being formed. Second, Starboard summarily raised an unconscionability defense in its briefing and then pressed that

7

point more extensively at oral argument. For the reasons that follow, neither of these arguments entitle Starboard to summary judgment on DePrince's breach of contract claim. Moreover, the trial court seemed to make a sua sponte finding that DePrince had not alleged any actionable damages to support his breach of contract claim. That ruling was also in error. We explain each of these theories at length because there appears to be a great deal of misunderstanding in each of these areas.

### A. Unilateral Mistake

There are three potentially viable tests to determine whether a contract may be rescinded based on a unilateral mistake of fact: (1) A four-prong test requiring the highest burden of proof for the party seeking to avoid the contract; (2) a two-prong test requiring the lowest burden of proof for the party seeking to avoid the contract; and (3) a 3-prong disjunctive test that provides several more-flexible methods of establishing a unilateral mistake.

This Court's most recent decisions on this topic clearly articulated and reaffirmed the viability of the four-prong test to establish a unilateral mistake, Rachid v. Perez, 26 So. 3d 70, 72 (Fla. 3d DCA 2010), and this panel—along with the trial court—is of course bound by that decision, see State v. Washington, 114 So. 3d 182, 188-89 (Fla. 3d DCA 2012) ("This panel is not free to disregard, or recede from, [a prior decision from this Court]; only this Court, sitting en banc, may recede from an earlier opinion."). However, it matters not which test is

8

applied at this stage of the proceedings because we find that the trial court's

summary judgment order cannot be upheld due to a unilateral mistake of fact under

any of these three formulations. Thus, the trial court's order granting summary

judgment cannot be upheld based on a unilateral mistake of fact. We analyze each

of these three tests in turn to clarify what appears to be a confusing area of the law

with inconsistent application among Florida's district courts of appeal.

### 1. *This Court's Four-Prong Test for Unilateral Mistakes of Fact*

This Court has held that in order to rescind an otherwise-valid contract[4]

based on a unilateral mistake, the party seeking to avoid the contract must show:

> (1) [T]he mistake was induced by the party seeking to benefit from the mistake, (2) there is no negligence or want of due care on the part of the party seeking a return to the status quo, (3) denial of release from the agreement would be inequitable, and (4) the position of the opposing party has not so changed that granting the relief would be unjust.

Rachid, 26 So. 3d at 72 (quoting Lechuga v. Flanigan's Enters., Inc., 533 So. 2d

856, 857 (Fla. 3d DCA 1988)); Ali R. Ghahramani, M.D., P.A. v. Pablo A.

Guzman, M.D., P.A., 768 So. 2d 535, 537 n.1 (Fla. 4th DCA 2000). Examining

the facts as alleged and supported by DePrince, Starboard did not conclusively

demonstrate either of the first two prongs of this analysis.[5]

---

[4] Starboard pled several other affirmative defenses to the sales agreement, however, only a unilateral mistake and unconscionability have been raised on appeal. For purposes of this analysis, we assume without deciding that the sales agreement is valid and enforceable in all other respects.

[5] DePrince has not argued on appeal that the third or fourth prong has not been

First, Starboard presented no evidence that DePrince induced it into making the pricing mistake. The primary focus of Starboard's argument, both at the summary judgment hearing and in its brief, was that DePrince must have known of the mistake in pricing due to his background as a former antiques and jewelry dealer and the advice he received from his gemologist partner and his sister. DePrince, however, denied that he knew there had been a pricing mistake in his affidavit, which is sufficient at the summary judgment phase of the proceedings to create a genuine issue of material fact. More importantly, we note that even if DePrince had known that the price he was quoted to purchase the diamond was in error, knowledge of an error is markedly different than inducement of that error. See, e.g., Gemini Investors III, L.P. v. Nunez, 78 So. 3d 94, 97 (Fla. 3d DCA 2012) (explaining that fraudulent inducement requires that the party seeking to enforce the contract "(1) made a statement concerning a material fact, (2) knowing that the statement was false, (3) with intent that the [mistaken party] act on the false statement; and (4) the [mistaken party was] damaged as a result of [its] reasonable reliance on the false statement").[6] Because Starboard presented no

_____

satisfied. He seems to agree that the transaction appears inequitable and that he has not changed his position in reliance on the purchase.

[6] We do not hold that the burden to establish inducement for purposes of the first prong of a unilateral mistake defense is the same as proving the elements for a fraudulent inducement defense, but merely use fraudulent inducement by way of example to demonstrate that inducement requires some type of action, not mere knowledge. In fact, the burden of proof cannot be the same because such a requirement would render the unilateral mistake of fact defense completely

10

evidence that the pricing mistake was induced by DePrince, the trial court clearly erred by granting summary judgment in Starboard's favor under the four-prong test.

Second, there is a factual dispute regarding the second prong of the unilateral mistake standard: that the party seeking to avoid the contract (Starboard) was not inexcusably negligent or failed to act with due care. DePrince avers in both his complaint and affidavit that Starboard did **not** act with due care when it sold him the diamond. Starboard claims it simply provided DePrince with the quote provided to it by Fiori, and that it did not act negligently. Thus, whether Starboard made a reasonable and understandable mistake or acted negligently in its handling of the sale is a disputed issue of fact, and, because questions involving reasonableness and negligence determinations are highly factual inquiries upon which reasonable people could disagree, they are rarely appropriately resolved on summary judgment. Spadafora v. Carlo, 569 So. 2d 1329, 1331 (Fla. 2d DCA 1990). This case is no exception.

### 2. *The Two-Prong Test for Unilateral Mistakes of Fact*

---

obsolete by requiring a party seeking to avoid a contract on that basis to prove fraudulent inducement, which is itself sufficient to render a contract voidable by the aggrieved party. Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So. 2d 306, 313 (Fla. 2000) ("It is axiomatic that fraudulent inducement renders a contract voidable . . . .").

11

Although we have determined that Starboard has not satisfied its burden of meeting the four-prong test adopted by this Court to set aside a contract for unilateral mistake for purposes of summary judgment, Starboard contends that the two-prong test for pleading and proving a unilateral mistake is the test that should be applied. Starboard's argument is not wholly without merit, and in fact, numerous Florida cases have relied on the two-prong standard. Most recently, in Garvin v. Tidwell, the Fourth District Court of Appeal stated "that a trial court may rescind an agreement based on unilateral mistake if '(1) the mistake did not result from an inexcusable lack of due care, and (2) defendant's position did not so change in reliance that it would be unconscionable to set aside the agreement.'" 126 So. 3d 1224, 1228 (Fla. 4th DCA 2012) (quoting Stamato v. Stamato, 818 So. 2d 662, 664 (Fla. 4th DCA 2002)); see also Fla. Ins. Guar. Ass'n v. Love, 732 So. 2d 456, 457 (Fla. 2d DCA 1999) (applying the same two-prong test); U.S. Alliance Corp. v. Tobon, 715 So. 2d 1122, 1123 (Fla. 3d DCA 1998) (same); BMW of N. Am., Inc. v. Krathen, 471 So. 2d 585, 588 (Fla. 4th DCA 1985) (same).

The two elements in the two-prong test are in substance nearly identical to two of the four prongs relied upon by this Court. Indeed, the four-prong test largely restates the two-prong test and adds the elements that "the mistake was induced by the party seeking to benefit from the mistake [and] . . . denial of release from the agreement would be inequitable." Rachid, 26 So. 3d at 72 (quoting

12

Lechuga, 533 So. 2d at 857). Interestingly, both the courts espousing the four-prong test **and** the courts applying the two-prong test all seem to rely on the Florida Supreme Court's decision in Maryland Casualty Co. v. Krasnek, 174 So. 2d 541 (Fla. 1965), to support their variant formulations of the standard. Compare Lechuga, 533 So. 2d at 857 (citing Krasnek after articulating a four-prong test for unilateral mistake) with Krathen, 471 So. 2d at 588 (citing Krasnek to support its two-prong test). Although Krasnek clearly states the two-prong test, the additional prongs of the four-prong test can be inferred from the opinion as well. Krasnek, 174 So. 2d at 543-44.

Most importantly in this case, however, is the fact that both the two- and the four-prong tests require that the party seeking to invoke a unilateral mistake of fact as an affirmative defense establish that he was not unduly negligent in forming the contract. As explained above, a genuine question of fact remains regarding whether Starboard was negligent in this case, thereby precluding summary judgment under the two-prong standard as well.

### 3. *Florida's Jury Instruction for Unilateral Mistakes of Fact*

Lastly, although neither party initially argued for the application of the third test to establish unilateral mistake, Florida's new jury instruction, which was adopted in June 2013, In re Standard Jury Instructions—Contract and Bus. Cases,

116 So. 3d 284, 324 (Fla. 2013), pertaining to unilateral mistake states the test in yet another substantially different way:

> **To establish [the defense of unilateral mistake],** (defendant) **must prove all of the following:**
> **1.** (Defendant) **was mistaken about** (insert description of mistake) **at the time the parties made the contract;**
> **2. [The effect of the mistake is such that enforcement of the contract would be unconscionable]**
> **[or]**
> **[** (Claimant) **had reason to know of the mistake or [he][she][it] caused the mistake.]**
> **and**
> **3.** (Defendant) **did not bear the risk of mistake. A party bears the risk of a mistake when**
> **[the parties' agreement assigned the risk to [him][her][it]]**
> **[or]**
> **[[he][she][it] was aware, at the time the contract was made, that [he][she] [it] had only limited knowledge about the facts relating to the mistake but decided to proceed with the contract].**

Fla. Std. Jury Instr. (Civ.) 416.26 (first alteration added).

This instruction is nearly identical to the formulation of the unilateral mistake defense found in the Restatement (Second) of Contracts. See Restatement (Second) of Contracts §§ 153, 154 (1979). However, this particular three-prong test has not been adopted or cited by any Florida decision to date. "Standard jury instructions are not binding precedent," although they can be quite persuasive and instructive "[i]n the absence of a definitive case." BellSouth Telecomm., Inc. v. Meeks, 863 So. 2d 287, 292 (Fla. 2003). In this instance, however, because there are definitive cases in this jurisdiction, we are bound by those cases. And in those

14

cases, this Court clearly applied the four-prong test.  See Rachid, 26 So. 3d at 72; Lechuga, 533 So. 2d at 857.

Even if jury instruction 416.26 was the law in Florida, Starboard should not have prevailed on its summary judgment motion.  That is because even if DePrince had been aware of the mistake and enforcement of the contract would be unconscionable—either or both of which would satisfy the second prong of the analysis—the third prong requires that the party seeking to assert the unilateral mistake defense show that it did not bear the risk of the mistake.  Fla. Std. Jury Instr. (Civ.) 416.26.  A party can be found to bear the risk of its mistake if the contract expressly assigns that risk to the party or if that party is aware at the time of the contract's formation that it had only limited knowledge about the facts relating to the mistake but decided to proceed with the contract anyway.  The contract in this case does not assign the risk to either party, and factual questions certainly remain as to whether Starboard should have known at the time it formed the contract that it had insufficient information to facilitate such an expensive transaction.  Indeed, Rusan himself stated in his deposition that he had never dealt with a diamond this large.  Because this factual question remains, summary judgment would also have been inappropriate under the new jury instruction.

To reiterate our position on unilateral mistakes of fact, this Court currently adheres to the four-prong test as stated in Rachid and Lechuga.  There are at least

two other tests—the two-prong test found primarily in other districts' case law and the three-prong test found in standard jury instruction 416.26—in Florida jurisprudence. The existence of three different tests has caused a great deal of confusion in the case law and to litigants and trial courts. However, under any of these three tests, Starboard should not have prevailed on summary judgment based on its unilateral mistake of fact defense.

### B. Unconscionability as an element of Unilateral Mistake

Starboard also contends on appeal, and the trial court seemed to find, that the contract was unenforceable because the agreement was unconscionable. The independent affirmative defense of unconscionability requires that the party seeking to avoid enforcement of the contract prove both procedural and substantive unconscionability. Kohl v. Bay Colony Club Condo., Inc., 398 So. 2d 865, 867 (Fla. 4th DCA 1981). The procedural aspect of an unconscionability defense focuses on the parties to the contract and the circumstances surrounding the formation of the contract. In essence, procedural unconscionability requires proof that one party had such an extreme advantage with respect to bargaining power, experience, or some other important characteristic that the other party to the contract was not given a "meaningful choice" to refuse the contract terms. Id. at 868 (quoting Bennett v. Behring Corp., 466 F. Supp. 689, 696 (S.D. Fla. 1979)). Before finding that a contract is a product of procedural unconscionability, the

16

court must examine all the details surrounding the formation of the contract—an incredibly factually intensive inquiry. Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 284 (Fla. 1st DCA 2003).

Conversely, the substantive aspect of an unconscionability defense focuses on the terms of the contract itself. To find that a contract is substantively unconscionable, a court must find that the terms are "so outrageously unfair as to shock the judicial conscience." Id. at 285 (quotation marks omitted). Resolving an unconscionability defense obviously requires a great deal of fact-finding regarding many aspects of the contract formation process; it should not be the subject of a trial court's gut feeling or whim, and it is rarely appropriately determined on summary judgment.

In this case, Starboard never asserted a full-fledged unconscionability defense in its motion for summary judgment.[7] Rather, Starboard seems to assert "unconscionability" as an element or factor—it is unclear which—in establishing its unilateral mistake defense. The only portions of Starboard's summary judgment motion and answer brief that discuss unconscionability cite Florida Cranes, Inc. v. Florida East Coast Properties, Inc. for the proposition that "equity can correct a unilateral mistake where said mistake is committed by an employee of the appellant, and constitutes a simple but honest mistake which could lead to an

---

[7] Starboard did assert unconscionability as an affirmative defense in its answer, and it is certainly entitled to litigate that defense on remand if it so chooses.

unconscionable result." 324 So. 2d 721, 722 (Fla. 3d DCA 1976). The use of the word "unconscionable" in the <u>Florida Cranes</u> decision is not in reference to the independent unconscionability defense explained above, however, but is merely a portion of the unilateral mistake analysis. Indeed, the word "unconscionable" is also used in the Florida Supreme Court's decision in <u>Krasnek</u>, but only to explain that a trial court cannot grant relief based on a unilateral mistake if the party seeking to enforce the contract has changed its position in reliance on the contract. 174 So. 2d at 543 (holding that a trial court cannot order rescission based on unilateral mistake unless "the respondent's position had not been so changed in reliance on the contract that it would be **unconscionable** to order rescission" (emphasis added)).

To the extent that Starboard relies on unconscionability as an independent affirmative defense to the contract—not as part of the unilateral mistake analysis— that defense was not properly before the trial court on summary judgment, and the trial court did not and could not make the requisite findings to warrant rescission on that basis. Indeed, the word "unconscionable," or any variation thereof, only appears one time in the hearing transcript—when the trial court found that it would be unconscionable to enforce the contract. And to the extent that Starboard relies on "unconscionability" as a way to establish its unilateral mistake defense, the "unconscionability" it has demonstrated is merely a necessary component to the

four-prong (or two-prong) test to establish a unilateral mistake of fact, not a sufficient basis for relief in and of itself. Thus, the trial court erred in granting relief based on "unconscionability."

## C. Damages

Finally, the trial court found that DePrince had not alleged any actionable damages as a result of the breach of contract. The trial court's ruling on this point reflects a fundamental misunderstanding of the nature of contractual damages. It is well-established in Florida, and in virtually every state, that the measure of a buyer's damages for a breach of contract when the seller refuses to deliver a product as agreed can include the difference between the market price of that product and the price of the product as specified in the repudiated contract. § 672.713, Fla. Stat. (2013); A & P Bakery Supply & Equip. Co. v. Hawatmeh, 388 So. 2d 1071, 1072 (Fla. 3d DCA 1980); U.C.C. § 2-713 (2002); see also Buschman v. Clark, 583 So. 2d 799, 799 (Fla. 1st DCA 1991) (applying the same rule to real estate). This damage calculation serves to vindicate the buyer's expectation interest by placing him in the same position in which he would have been had the contract been executed as agreed.

The trial court's finding appears to be based on the notion that DePrince had not taken any action or incurred any additional expenses in reliance on the sales agreement, and thus, DePrince would have incurred no damages whatsoever had

19

the contract never been made.  However, this is only one method of calculating a plaintiff's damages for breach of contract.[8]  As explained in the Restatement (Second) of Contracts § 344 (1981), there are three remedies a plaintiff may elect to vindicate his rights for a breach of contract depending on the circumstances:

(a) his "expectation interest," which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed,
(b) his "reliance interest," which is his interest in being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in had the contract not been made, or
(c) his "restitution interest," which is his interest in having restored to him any benefit that he has conferred on the other party.

A plaintiff that has alleged any of these types of damages has alleged actionable damages under the law.  Here, DePrince clearly seeks to vindicate his expectation interest in the contract by recovering the difference between the market value of the contract and the price he agreed to pay—an amount that likely exceeds $2 million according to all the testimony below.  Thus, the trial court erred in finding that DePrince had not alleged "actionable damages" and accordingly erred in granting summary judgment on that basis.

## II.    Specific Performance

DePrince pled specific performance as a wholly separate cause of action from his breach of contract claim. Specific performance is an equitable remedy

---

[8] This detrimental reliance is also one of the elements to rescind a contract based on unilateral mistake as explained above.

20

that may be invoked in a breach of contract action under certain circumstances. See Rybovich Boat Works, Inc. v. Atkins, 585 So. 2d 270, 272 (Fla. 1991) ("[T]he **remedy** of specific performance is not a matter of right." (emphasis added)); Linkous v. Linkous, 941 So. 2d 530, 530 (Fla. 1st DCA 2006) ("Specific performance is an appropriate **remedy** only when there is no adequate **remedy** at law." (emphasis added)); Frank Silvestri, Inc. v. Hilltop Devs., Inc., 418 So. 2d 1201, 1203 (Fla. 5th DCA 1982) (explaining that in a breach of contract for the sale of real property, the seller can elect either the remedy of specific performance or retain the property and sue for damages for breach of contract). "It is a well-established legal principle that a court of equity will grant specific performance of a contract involving personal property when the property is of a unique character and value, such as an antique, and there is no adequate remedy at law." Mangus v. Porter, 276 So. 2d 250, 251 n.1 (Fla. 3d DCA 1973) (citing Graham v. Herlong, 39 So. 111, 111 (Fla. 1905)); see also § 672.716(1), Fla. Stat. (2013) ("Specific performance may be decreed where the goods are unique or in other proper circumstances.").

The trial court granted summary judgment in Starboard's favor on DePrince's claim for specific performance based on its determination that the diamond at issue is not unique. This ruling, however, is in conflict with the facts DePrince alleged and averred in his action. In fact, the only evidence submitted on

21

this issue was an affidavit submitted by DePrince's expert gemologist averring that the gem was unique based on a variety of characteristics and a specific laser number assigned only to that gem. Thus, whether the diamond in this case is unique is a factual issue not properly resolved on summary judgment.

## III. The Conversion Action

DePrince's conversion action—unlike his breach of contract and specific performance actions—is a claim sounding in tort rather than in contract. Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 495 (Fla. 3d DCA 1994).[9]

> The essence of the tort of conversion is the exercise of wrongful dominion or control over property to the detriment of the rights of the actual owner. Thus, conversion may occur where a person wrongfully refuses to relinquish property to which another has the right of possession. The tort may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action.

Seymour v. Adams, 638 So. 2d 1044, 1046-47 (Fla. 5th DCA 1994) (citations omitted). An essential element of any conversion claim is that the defendant must have taken possession of the item the plaintiff has the right to possess.

The trial court made a factual finding that Starboard never had possession of the diamond, and therefore, DePrince had not established a necessary element of his conversion claim. DePrince, however, maintained that Starboard did in fact

---

[9] Whether DePrince's conversion claim is properly brought when it overlaps with the contract claims is not before us, and we therefore offer no opinion on that issue.

22

have possession of the diamond by way of its consignment agreement with Fiori. The relevant portion of the consignment agreement states: "Title to the [diamond] shall at all times remain with [Fiori] until the time of its sale to customers of [Starboard], whereupon the [diamond] shall be deemed to have been purchased from [Fiori] by [Starboard]." No evidence was introduced other than the consignment agreement, and thus, there is no evidence in the record to refute Starboard's constructive possession of the diamond. Summary judgment in Starboard's favor was therefore improperly granted.

## CONCLUSION

The trial court erred by granting summary judgment on all three of DePrince's claims. There remain genuine issues of material fact to be resolved, and Starboard has not demonstrated that it is entitled to judgment as a matter of law.

We also note that, for some inexplicable reason, Fiori has not been made a party to this suit. It is difficult to imagine how DePrince's and Starboard's rights and obligations can be completely established and redressed without Fiori's involvement, particularly if specific performance is found to be a proper remedy. Importantly, both parties in their briefs have at times suggested that Fiori is the party who was actually negligent by way of its price quote, which omitted a "per carat" designation. Fiori can undoubtedly shed light on who, if anyone, should

23

shoulder the blame of the price mistake, as well as explain industry standards and its pattern of dealings with Starboard.

We therefore conclude that while some may claim that diamonds are forever, the same cannot be said of the trial court's summary judgment order.

Reversed and remanded.