# Third District Court of Appeal

### State of Florida

Opinion filed August 1, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1149
Lower Tribunal No. 13-16523
_____

**Thomas DePrince,**
Appellant,

vs.

**Starboard Cruise Services, Inc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Michael Hanzman, Judge.

McDonald Hopkins, and Robert A. Cohen, Mario M. Ruiz and Joelle H. Dvir, for appellant.

Isicoff Ragatz and Eric D. Isicoff and Carolina A. Latour, for appellee.

Before ROTHENBERG, C.J., and SUAREZ, LAGOA, SALTER, EMAS, FERNANDEZ, LOGUE, SCALES, LUCK and LINDSEY, JJ.

**<u>On Motion for Rehearing En Banc</u>**

LUCK, J.

In 1965, our state Supreme Court held that Florida law allowed for rescission of a contract based on unilateral mistake. Maryland Cas. Co. v. Krasnek, 174 So. 2d 541, 542 (Fla. 1965) ("Although there is little doubt that the statement in the District Court's opinion that unilateral mistake provides no basis for rescission of a contract or for other equitable relief therefrom, represents the majority view, we are of opinion that it does not accurately reflect Florida case law." (citations omitted)). But what elements are required to prove unilateral mistake? Our court has read Krasnek to answer the question in two ways. In one line of cases, we have read Krasnek to require that the party seeking rescission prove "the mistake was induced by the party seeking to benefit from the mistake." DePrince v. Starboard Cruise Servs., Inc., 163 So. 3d 586, 592 (Fla. 3d DCA 2015) (DePrince I); Rachid v. Perez, 26 So. 3d 70, 72 (Fla. 3d DCA 2010); Lechuga v. Flanigan's Enters., Inc., 533 So. 2d 856, 857 (Fla. 3d DCA 1988). In another line of cases, we have not required the party seeking rescission to prove that she was induced to make the mistake. See U.S. Alliance Corp. v. Tobon, 715 So. 2d 1122, 1123 (Fla. 3d DCA 1998); Penn. Nat'l Mut. Cas. Ins. Co. v. Anderson, 445 So. 2d 612, 613 (Fla. 3d DCA 1984). To address the lack of uniformity, we grant Starboard Cruise Service's motion for rehearing en banc, vacate the panel opinion, DePrince v. Starboard Cruise Servs., Inc., 43 Fla. L. Weekly D171 (Fla. 3d DCA Jan. 17, 2018) (DePrince II), and recede from Lachuga, Rachid, and DePrince I to

2

the extent they require inducement as an element of unilateral mistake. We conclude that a party seeking rescission of a contract based on a unilateral mistake does not have to prove that she was induced into making the mistake by the other party, and affirm the judgment for Starboard.

## FACTUAL AND PROCEDURAL BACKGROUND

1. The cruise. On February 11, 2013, Thomas DePrince, a passenger aboard a cruise ship, visited the ship's jewelry boutique, operated by Starboard, where he indicated his interest in purchasing a fifteen to twenty carat loose diamond.[1] DePrince specified he wanted an emerald cut, high quality, color D, E, or F diamond with a G.I.A. certificate.[2] Because the shipboard jewelry store did not have such a diamond, the store's manager, Mr. Rusan, electronically mailed Starboard's corporate office.

Ms. Jimenez, at the corporate office, reached out to Starboard's diamond vendor in California, Sophia Fiori. Mr. Bachoura from Sophia Fiori, with some reservations because he did not believe a sale of this magnitude should take place aboard a ship, called a diamond broker in New York, Julius Klein, for its available inventory. Julius Klein sent Mr. Bachoura a list of diamonds available with the

[1] "A 'loose diamond' refers only to the gemstone itself, rather than a gemstone that is a component of a larger piece of jewelry." DePrince I, 163 So. 3d at 589 n.1.
[2] "[T]he Gemological Institute of America (the 'GIA'), [is] a not-for-profit entity that grades and certifies gemstones . . . ." Zaretsky v. William Goldberg Diamond Corp., 820 F.3d 513, 516 (2d Cir. 2016).

3

desired specifications. The list provided a per-carat price and a net price for each diamond. Mr. Bachoura selected two diamonds from the inventory listing, and electronically mailed the following information to Ms. Jimenez:

> These prices are ship sailing prices based on the lowest tier diamond margin we have. Let me know if you have any questions.
>
> EC 20.64 D VVS2 GIA VG G NON selling price $235,000
> EC 20.73 E VVS2 GIA EX EX FNT selling price $245,000

Ms. Jimenez forwarded this information to Mr. Rusan on the ship. Mr. Rusan, in turn, presented the information to DePrince and his partner, Mr. Crawford.

Neither Ms. Jimenez nor Mr. Rusan had ever sold a large loose diamond before, and did not realize the quoted price was per carat. Mr. Crawford, who was a certified gemologist, asked the opinion of DePrince's sister, a graduate gemologist. Ms. DePrince warned that something was not right because the price for a diamond of that size should be in the millions and recommended not buying the diamond.

Disregarding his sister's advice, DePrince contracted with Starboard to purchase the 20.64 carat diamond for the quoted $235,000 price, paying with his American Express credit card. Shortly after the sale, Starboard discovered that the $235,000 price was per carat. Starboard immediately notified DePrince of the error and reversed the charges to his credit card. DePrince then filed this complaint seeking to enforce the parties' contract.[3]

4

2.  DePrince I.  The trial court initially granted summary judgment in favor

of Starboard on June 20, 2014, based on Starboard's defense of unilateral mistake.

This court reversed that judgment in DePrince I.  There, the court reviewed the

various tests for determining whether a party's agreement could be rescinded based

on a unilateral mistake.  Concluding that the panel and trial court were bound by

the "four-prong test to establish unilateral mistake," the court

> held that in order to rescind an otherwise-valid contract based on a
> unilateral mistake, the party seeking to avoid the contract must show:
>
>> (1) [T]he mistake was induced by the party seeking to
>> benefit from the mistake, (2) there is no negligence or
>> want of due care on the part of the party seeking a return
>> to the status quo, (3) denial of release from the agreement
>> would be inequitable, and (4) the position of the
>> opposing party has not so changed that granting the relief
>> would be unjust.

Id. at 592 (quotation omitted; footnote omitted).  The court explained that "this

panel – along with the trial court – is of course bound by" the four-prong test.  Id.

at 591.  Later in the opinion, the court "reiterate[d] our position" that we "currently

adhere[] to the four-prong test."  Id. at 594.   The court then went on to apply the

four-prong test to the facts in the record at the summary judgment hearing.

The court concluded that there was a genuine issue of material fact on the

inducement prong because "knowledge of an error is markedly different than

---

3 DePrince's complaint also included claims for specific performance and
conversion but he voluntarily dismissed those before trial.

inducement of that error." Id. at 592. As an example of inducement, the court

quoted the test for fraudulent inducement, and explained in a footnote:

> We do not hold that the burden to establish inducement for purposes of the first prong of a unilateral mistake defense is the same as proving the elements for a fraudulent inducement defense, but merely use fraudulent inducement by way of example to demonstrate that inducement requires some type of action, not mere knowledge. In fact, the burden of proof cannot be the same because such a requirement would render the unilateral mistake of fact defense completely obsolete by requiring a party seeking to avoid a contract on that basis to prove fraudulent inducement, which is itself sufficient to render a contract voidable by the aggrieved party.

Id. at 592 n.6 (emphasis added).

The court also concluded that there was a genuine issue of material fact on

the negligence prong. "[W]hether Starboard made a reasonable and

understandable mistake or acted negligently in its handling of the sale is a disputed

issue of fact," the court explained. Id. at 593. Based on this, the court reversed the

summary judgment for Starboard and remanded for further proceedings because

"[t]here remain genuine issues of material fact to be resolved." Id. at 598.

3. The trial. The case went to trial on April 4, 2016 on DePrince's claim of

breach of contract, and Starboard's defense of unilateral mistake. By the end of

the case the issues had been whittled down. The parties did not dispute that they

entered into an agreement; the only issue was whether Starboard was excused from

that agreement because it made a unilateral mistake. The trial court instructed the

jury on the elements of the unilateral mistake affirmative defense, including

6

inducement: "To establish this defense Starboard must prove . . . the mistake was induced by the party, here Mr. DePrince, seeking to benefit from the mistake. Inducement may occur through misrepresentations, statements, or omissions which cause the contracting party to enter into a transaction."

The jury found that Starboard should be excused from performing under the contract because it committed a unilateral mistake. The trial court denied DePrince's motion for directed verdict on the unilateral mistake affirmative defense, and entered judgment for Starboard consistent with the jury's verdict. This appeal followed.

4. DePrince II. In DePrince II, a divided panel of the court, being bound by DePrince I, reversed the judgment for Starboard and remanded for a new trial because the trial court's jury instruction on the inducement prong of the unilateral mistake test was inconsistent with DePrince I. The trial court defined inducement to include DePrince's omission of information about the price of the diamond, even though DePrince I defined inducement to be "some type of action, not mere knowledge." See DePrince II, 43 Fla. L. Weekly at D174 ("Defining inducement as making misrepresentations and statements is correct, but the trial court went astray by telling the jury that an omission of information can be inducement. DePrince I was clear 'that inducement requires some type of action, not mere

7

knowledge,' and as an example gave making a false statement." (quoting DePrince I, 163 So. 3d at 592 & n.6)).

5. Motion for Rehearing En Banc. Starboard moved for rehearing en banc based on the lack of uniformity in our decisions. According to Starboard, in some of our cases (Lechuga, Rachid, and DePrince I) we have required parties claiming a unilateral mistake to meet a four-part test that included inducement as an element. In other cases (Anderson and Tobon), we have not required inducement. We grant rehearing en banc to resolve this conflict.

## DISCUSSION

While the panel in DePrince II was bound by DePrince I to hold that the unilateral mistake doctrine required some type of action to induce the mistake, the en banc court is not so bound. See State v. Washington, 114 So. 3d 182, 188-89 (Fla. 3d DCA 2012) ("This panel is not free to disregard, or recede from, that decision; only this Court, sitting en banc, may recede from an earlier opinion."). We, unlike the DePrince II panel, are allowed to take a fresh look at the Florida Supreme Court's Krasnek decision to see if it required inducement as an element of unilateral mistake, and to review the two strands of our post-Krasnek decisions: those that have not required inducement (Anderson and Tobon); and those that have (Lechuga, Rachid, and DePrince I).

*Krasnek*

8

In Krasnek, the plaintiff was injured by a car owned by a furniture company. 174 So. 2d at 542. The furniture company filed an insurance claim with Maryland Casualty Company. Id. The insurance company, "believing that their company carried liability insurance on the vehicle involved," negotiated a settlement with the injured plaintiff. Id. The terms of the settlement were as follows: the plaintiff signed and delivered a general release, and in exchange, the insurance company gave the plaintiff a check for $759.86. Id. After the check was delivered, but before it was deposited, the insurance company "discovered that earlier information received from its home office was in error and that the policy covering the vehicle in question had been permitted to lapse." Id. Immediately after discovering the coverage error, the insurance company "stopped payment on the check." Id. The plaintiff sued to enforce the settlement. Id. The insurance company "defended . . . on the equitable ground that the settlement contract was subject to rescission by reason of a unilateral mistake as to a material fact." Id.

The trial court granted summary judgment for the insurance company, but the district court reversed on two grounds. Id. First, the district court concluded that "under Florida law, unilateral mistake provide[d] no basis for equitable relief and therefore no defense" to rescind the contract. Id. Second, the district court found that even if unilateral mistake was a valid defense, the insurance company did not meet the elements of reliance and undue negligence. Id.

9

The Florida Supreme Court accepted conflict jurisdiction on the first holding that under Florida law there was no unilateral mistake defense. Id. Discussing a string of earlier cases, the Court concluded that "this court has granted equitable relief on the basis of unilateral mistake." Id. at 543. Having decided the conflict issue, the Court "turn[ed] to the alternative grounds for the holding below." Id. at 543. The Court explained there was "no doubt that the law was correctly stated" in the district court's decision. Id. There could be no "equitable relief on the ground of unilateral mistake," the Court said, "in instances in which the mistake is the result of a lack of due care or in which the other party to the contract has so far relied upon the payment that it would be inequitable to require repayment." Id. The trial court had found, "first, that the mistake did not result from an inexcusable lack of due care in the circumstances, and second, that the [injured plaintiff]'s position had not been so changed in reliance on the contract that it would be unconscionable to order rescission." Id. Because these findings were supported by substantial evidence, the Florida Supreme Court concluded that "they should not be disturbed on appeal." Id. The Court reversed the district court, and directed the trial court "to reinstate the judgment" for the insurance company. Id. at 544.

*Post-Krasnek (Anderson and Tobon): Inducement Not Required*

Following Krasnek, in Anderson and Tobon, we did not require inducement as an element of unilateral mistake. In Anderson, a couple's Cadillac caught fire.

10

445 So. 2d at 613. The car, at the time of the fire, was insured by Pennsylvania National. Id. The insurance company's adjuster went to the dealer's lot where the Cadillac had been taken, but he mistakenly inspected the wrong fire-damaged Cadillac (which looked like the couple's car and had a similar vehicle identification number). Id. Based on the inspection of the wrong car, the insurance company determined it was a total loss and issued a check "for the full insured value of the[] car." Id. Before the check was cashed, however, the error was discovered and the insurance company stopped payment on the check. Id. The couple sued to enforce the settlement, and the trial court found for the couple. Id.

We reversed because Krasnek "squarely h[eld] that a party – even an insurance company such as the present appellant – should be relieved of the consequences of a unilateral mistake like the one involved here." Id. The court explained that neither of the two exceptions to the unilateral mistake doctrine discussed in Krasnek (reliance and undue negligence) applied:

> Neither of the two exceptions stated in the decision itself apply. First, the plaintiffs did not detrimentally rely upon the mistake since, as they concede, their only action which even arguably so qualifies, a commitment to purchase an expensive replacement vehicle, occurred before they knew of the extent of the carrier's erroneous largesse. Second, while some degree of negligence was undoubtedly involved – in common, as the supreme court pointed out . . . with all such cases – it surely does not approach the inexcusable lack of due care the court indicated was necessary to entitle the plaintiffs to retain their consequent windfall.

11

Id. (citations and quotations omitted).

Tobon also explained the test for unilateral mistake without reference to inducement. In Tobon, the plaintiff sued a security company and its driver for wrongful death. 715 So. 2d at 1122. The company filed an offer of judgment "on behalf of" the security company, which was accepted by the plaintiff. Id. at 1122-23. Shortly after the offer had been accepted, the security company moved to clarify that the offer was made on its behalf and on behalf of the driver. Id. at 1123. The same attorney represented the security company and driver, and testified that "after his secretary typed up the offer of judgment he reviewed it but failed to notice that [the driver]'s name was not on it." Id. The trial court denied the motion and entered judgment consistent with the offer. Id.

The question on appeal was "whether the mistake in this case afford[ed] ground for relief." Id. We said that it did, citing to Krasnek and explaining that "the Florida Supreme Court has held that a contract such as the settlement agreement in this case may be rescinded on the grounds of unilateral mistake unless the mistake is a result of an inexcusable lack of due care or if the other party to the contract has so far relied upon the contract that it would be inequitable to rescind." Id.

*Post-Krasnek (Lechuga, Rachid, and DePrince I): Inducement Required*

12

On the other hand, in three of our post-Krasnek cases – Lechuga, Rachid, and DePrince I – we have said that to prove unilateral mistake, the mistaken party must show that it was induced into making the mistake by the other party. In Lechuga, for example, which was decided after Anderson but before Tobon, the plaintiff sued a bar after the plaintiff was beaten up in the bar's parking lot. Lechuga, 533 So. 2d at 856. During settlement negotiations, the bar told the plaintiff that it would be filing a bankruptcy petition. Id. "Based on that representation," the plaintiff authorized his attorney to accept the settlement. Id. After the case was dismissed, the plaintiff "learned that [the bar] did not file for liquidation in bankruptcy, as was represented to [the plaintiff], but instead filed for reorganization under the bankruptcy laws." Id. When the plaintiff refused to sign the settlement documents, the bar moved to compel enforcement of the settlement agreement, which was granted by the trial court. Id. at 857.

The plaintiff argued on appeal that his attorney was authorized to settle only if the bar was going into liquidation under the bankruptcy laws, and there was a unilateral mistake as to the bar's ability to satisfy a judgment. Id. We agreed, and reversed for both reasons. The "unrebutted testimony" was that the plaintiff's attorney did not have blanket authority to unconditionally settle the case, we said, and "[e]ven if [the plaintiff] had given his attorney authority to settle, the agreement could still be rescinded on the basis of a unilateral mistake." Id.

13

> Where it is shown that (1) <u>the mistake was induced by the party seeking to benefit from the mistake</u>, (2) there is no negligence or want of due care on the part of the party seeking a return to the status quo, (3) denial of release from the agreement would be inequitable, and (4) the position of the opposing party has not so changed that granting the relief would be unjust, a unilateral mistake may provide a basis for rescission of a contract.

<u>Id.</u> (emphasis added). We cited <u>Krasnek</u> as support for this four-part test.

We reaffirmed the four-part test, including the inducement prong, in <u>Rachid</u>. There, the wife sought to rescind her prenuptial agreement based on unilateral mistake because "she was uninformed or misunderstood significant facts." 28 So. 2d at 71. We affirmed the trial court's order denying the wife's motion to set aside the order granting the motion to enforce the mediated settlement agreement because the wife "fail[ed] to present the legal argument of unilateral mistake below." <u>Id.</u> at 72. But "[e]ven if [she] had preserved the issue of unilateral mistake, we would affirm," we said, because "the record d[id] not support the legal remedy of rescission on the basis that the settlement agreement was the product of a unilateral mistake." <u>Id.</u> We explained that "[u]nder Florida law, the party seeking rescission based on unilateral mistake must establish" the four-part test, quoting and citing to <u>Lechuga</u>. <u>Id.</u> Because the wife did "not claim that any party misled or induced her to enter into the settlement agreement," she did not meet her burden. <u>Id.</u>

14

In DePrince I, we acknowledged the various tests for unilateral mistake, but stated unequivocally that "[t]his Court's most recent decisions on this topic clearly articulated and reaffirmed the viability of the four-prong test to establish a unilateral mistake." 163 So. 3d at 591 (citing Rachid). "[T]his Court," we held, "currently adheres to the four-prong test as stated in Rachid and Lechuga." Id. at 594.

*Resolving the Conflict:  Inducement Is Not Required*

We agree with Starboard that inducement is not an element of unilateral mistake, and for three reasons, we recede from Lechuga – and the cases that followed it (Rachid and DePrince I) – to the extent they require inducement. First, the inducement requirement is inconsistent with Krasnek. Krasnek used the term induce once, and it was only to describe an older case from the 1920s (Langley) that the Florida Supreme Court used to reject the conclusion that unilateral mistake had no basis in Florida law. See Krasnek, 174 So. 2d at 542 ("[I]n the Langley case . . . although it appears that the mistake was actually induced by the party against whom rescission was sought, the fact is that the court held in favor of rescission on the ground of unilateral mistake.").

Two of its other older cases, the Court said, were "rather more in point" and "noteworthy." Id. at 542-43. In one case, "the decedent of the party suing for rescission had executed a general release in favor of the other party to an accident,

15

unaware at the time that he had suffered more serious injuries than yet appeared." Id. at 542 (discussing Boole v. Fla. Power & Light Co., 3 So. 2d 335 (Fla. 1941)). In the other case, "the board of trustees of a church sought to cancel a deed by which they had conveyed certain church property, on the ground that they had by mistake included land which had previously been conveyed to another grantee." Id. at 543 (discussing Crosby v. Andrews, 55 So. 57 (Fla. 1911)). In both cases, the Court granted rescission of the contracts based on unilateral mistake. And in both cases, the party that benefited from the mistake did not induce it.

In the part of the Krasnek opinion discussing the district court's conclusion that the insurance company had not met the test for unilateral mistake, the Court said there was "no doubt" the district court "correctly stated" the law for unilateral mistake: equitable relief for a unilateral mistake would be prevented "in instances in which the mistake is the result of a lack of due care or in which the other party to the contract has so far relied upon the payment that it would be inequitable to require repayment." Id. Unlike for negligence, the Court did not require lack of inducement as a way to prevent the application of the unilateral mistake doctrine.

Nor could it. A court's holding can only go as far as its facts, see Miccosukee Tribe of Indians v. Lewis Tein, P.L., 227 So. 3d 656, 661 (Fla. 3d DCA 2017) ("One of the basic principles of appellate law is that the holding of a decision cannot extend beyond the facts of the case."), cert. denied, 138 S. Ct. 741

16

(2018), and the facts in <u>Krasnek</u> did not include inducement. There, the insurance company erroneously believed that it insured the car that injured the plaintiff. <u>Krasnek</u>, 174 So. 2d at 542. The error was caused by the insurance company's home office, which discovered the policy had lapsed after the settlement. <u>Id.</u> The insurance company's mistake was its own doing, and was not induced by the injured plaintiff or anyone else. <u>Krasnek</u> could not have concluded that the mistaken party was induced into making the mistake by the other party. Yet, the Court still found that the trial court got it right in rescinding the contract. Our <u>Lechuga</u> decision was wrong for reading <u>Krasnek</u> as requiring inducement as an element of unilateral mistake. (<u>Rachid</u> and <u>DePrince I</u> simply followed <u>Lechuga</u>'s lead.)

<u>Second</u>, the Florida Supreme Court did not require inducement in its most recent discussion of the unilateral mistake test. In 2013, the Court adopted standard jury instructions for contract and business law cases, and included one for the unilateral mistake affirmative defense. <u>In re Standard Jury Instructions – Contract & Bus. Cases</u>, 116 So. 3d 284, 323-24 (Fla. 2013). In support, the instruction cited our <u>Anderson</u> decision as one of its sources and authorities. <u>Id.</u> at 324.[4] As the Court reminded us, publishing standard instructions "does not

---

[4]        **SOURCES AND AUTHORITIES FOR 416.26**

1. A contract may be "set aside on the basis of unilateral mistake unless (a) the mistake is the result of an inexcusable lack of due care

17

foreclose either requesting additional or alternative instructions or contesting the[ir] legal correctness" Id. at 288. We cite the unilateral mistake instruction not for its "correctness," but to show the Court knows how to read the unilateral mistake cases better than we can. The Court adopted an instruction based on Anderson that did not require inducement as an element of unilateral mistake.

Third, the other four district courts also have read Krasnek consistent with how we read it in Anderson and Tobon as not requiring inducement:

- First District. "In order to establish that the mistake is one for which equitable relief may be granted, it must be established that it is one of such consequence that enforcement would be unconscionable; it must relate to the substance of the consideration, that is, a material feature; the mistake occurred regardless of the exercise of ordinary care; and it must be possible under the circumstances to place the other party in status quo." State Bd. of Control v. Clutter Const. Corp., 139 So. 2d 153, 156 (Fla. 1st DCA 1962).

---

or (b) the other party has so changed its position in reliance on the contract that rescission would be unconscionable." BMW of N. Am. v. Krathen, 471 So. 2d 585, 588 (Fla. 4th DCA 1985) (citing Maryland Cas. Co. v. Krasnek, 174 So. 2d 541 (Fla.1965); Orkin Exterminating Co. v. Palm Beach Hotel Condo. Ass'n, Inc., 454 So. 2d 697 (Fla. 4th DCA 1984); Pennsylvania Nat'l Mutual Cas. Ins. Co., v. Anderson, 445 So. 2d 612 (Fla. 3d DCA 1984)).

Standard Jury Instructions – Contract & Bus. Cases, 116 So. 3d at 324.

18

- Second District. "Florida law permits a party to rescind a contract based on unilateral mistake unless the mistake results from an inexcusable lack of due care or unless the other party has so detrimentally relied on the contract that it would be inequitable to order rescission." Fla. Ins. Guar. Ass'n, Inc. v. Love, 732 So. 2d 456, 457 (Fla. 2d DCA 1999).

- Fourth District. "[A] trial court may rescind an agreement based on unilateral mistake if (1) the mistake did not result from an inexcusable lack of due care, and (2) defendant's position did not so change in reliance that it would be unconscionable to set aside the agreement. Additionally, we will look at whether the unilateral mistake goes to the very substance of the agreement." Garvin v. Tidwell, 126 So. 3d 1224, 1228 (Fla. 4th DCA 2012) (quotations omitted).

- Fifth District. "Florida law permits a party to rescind a contract based on unilateral mistake unless the mistake results from an inexcusable lack of due care or unless the other party has so detrimentally relied on the contract it would be inequitable to order rescission." Flynt v. Progressive Consumers Ins. Co., 980 So. 2d 1217, 1219 (Fla. 5th DCA 2008).

* * *

Based on Krasnek, our decisions in Anderson and Tobon, the Florida Supreme Court's standard instruction on unilateral mistake, and the unilateral

19

mistake cases from the other four districts, we conclude that inducement is not an element of unilateral mistake. A contract may be set aside on the basis of a unilateral mistake of material fact if: (1) the mistake was not the result of an inexcusable lack of due care; (2) denial of release from the contract would be inequitable; and (3) the other party to the contract has not so changed its position in reliance on the contract that rescission would be unconscionable. See Krasnek, 174 So. 2d at 543 ("There is no doubt that the law was correctly stated therein as preventing equitable relief on ground of unilateral mistake in instances in which the mistake is the result of a lack of due care or in which the other party to the contract has so far relied upon the payment that it would be inequitable to require repayment."); Anderson, 445 So. 2d at 613 ("[T]he case is . . . governed by [Krasnek], which squarely holds that a party . . . should be relieved of the consequences of a unilateral mistake like the one involved here. And there are no grounds for departing from Krasnek in this case. Neither of the two exceptions stated in the decision itself apply. First, the plaintiffs did not detrimentally rely upon the mistake since, as they concede, their only action which even arguably so qualifies, a commitment to purchase an expensive replacement vehicle, occurred before they knew of the extent of the carrier's erroneous largesse. Second, while 'some degree of negligence' was undoubtedly involved – in common, as the supreme court pointed out . . . with all such cases – it surely does not approach the

20

'inexcusable lack of due care' the court indicated was necessary to entitle the plaintiffs to retain their consequent windfall." (footnote and citations omitted)).

*This Case*

Applied to this case, the jury was properly instructed on the elements of unilateral mistake, although the instruction included extra language on inducement, which we've concluded is not an element. The trial court instructed the jury that: "Starboard m[u]st show that there was no inexcusable lack of due care under the circumstance on its part, the party seeking return to the status quo. Starboard must also show that denial of release from the agreement would be inequitable. In other words, it would be inequitable to hold it to the contract. And it must show that Mr. DePrince did not change his position in any way and that granting relief would not be unjust."

Competent substantial evidence supported the jury's finding that all the required elements for unilateral mistake had been met. Starboard received incorrect information from its home office, which caused the company to quote a price that was a fraction of the company's cost to purchase the diamond wholesale. Based on the evidence, the jury was entitled to find that the mistake was not "inexcusable," and DePrince did not detrimentally rely on the mistake such that it would be unconscionable to rescind the sales contract.

**CONCLUSION**

21

We granted the motion for rehearing en banc, and vacated our opinion in DePrince II, to resolve the lack of uniformity in our decisions defining the elements of unilateral mistake. Having resolved the conflict, we conclude that inducement is not a required element, and recede from Lechuga, Rachid, and DePrince I to the extent they held that it was. Without inducement as an element, we affirm the trial court's judgment for Starboard.[5]

---

[5] We agree with DePrince II that none of the evidentiary issues raised by DePrince, "separately or together, constituted reversible error warranting a new trial." 43 Fla. L. Weekly at D175. And because we are affirming based on the jury's finding that Starboard made a unilateral mistake, we do not need to reach the issue of whether the jury's verdict on Starboard's fraudulent inducement defense was supported by the evidence.